KIRKLAND v. RUTHERFORD et al.
(No. 8013.)

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 17, 1914. Rehearing Denied Dec. 5, 1914.)

1. PRINCIPAL AND AGENT (§ 189*)—ACTION—EVIDENCE. ADMISSIBLE UNDER PLEADINGS—REPRESENTATIONS BY AGENT.

In a suit in effect to rescind an exchange of property because of false representations, where the petition specifically alleged that the false representations were made by defendants, and nowhere alleged that they were made through agents, evidence as to representations by alleged agents was not admissible, especially where there was no evidence justifying the inference that such persons were defendants' agents.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 713–717; Dec. Dig. § 189.*]

2. PRINCIPAL AND AGENT (§ 23*)—EVIDENCE OF AGENCY.

In a suit to rescind an exchange of property, evidence that certain persons who made false representations approached plaintiff with reference to a trade of the property was not sufficient evidence that such persons were defendants' agents, since agency cannot be proved by the mere declarations or acts of the agent alone.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 41; Dec. Dig. § 23.*]

3. EXCHANGE OF PROPERTY (§ 8*)—SUITS FOR RESCISSION—EVIDENCE ADMISSIBLE UNDER PLEADINGS.

In a suit to rescind an exchange of land for corporate stock for false representations as to the condition of the corporation, where there was no issue of laches or limitations, evidence that plaintiff had no knowledge of the true condition of the corporation prior to the time of filing his petition was not admissible.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 14–18; Dec. Dig. § 8.*]

4. EXCHANGE OF PROPERTY (§ 8*)—RESCISSION—EVIDENCE.

In a suit to rescind an exchange of land for corporate stock for false representations as to the condition of the corporation, where the jury found that defendant neither made nor authorized any false representations, evidence that plaintiff had no knowledge of the true condition of the corporation prior to the filing of the petition, and that the property was of less value than had been represented, was immaterial.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 14–18; Dec. Dig. § 8.*]

5. APPEAL AND ERROR (§ 1046*)—RECORD—PREJUDICE FROM ERROR.

No harm from the holding of a night session of the court when plaintiff's leading counsel was unable to be present from illness appeared, where the bill of exceptions failed to show what transpired at the night session, but did show that plaintiff was represented by two other attorneys.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4128–4131, 4134; Dec. Dig. § 1046.*]

6. EXCHANGE OF PROPERTY (§ 8*)—RESCISSION—GROUNDS—FRAUD.

Where, though on an exchange of land for corporate stock defendant's husband made false representations as to the condition of the corporation, defendant made no misrepresentations, and did not authorize her husband to represent her, and the exchange resulted from negotiations between plaintiff and defendant, plaintiff could not rescind and recover the land, especially where there was no finding that plaintiff relied on the misrepresentations made by the husband.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 14–18; Dec. Dig. § 8.*]

Appeal from District Court, Nolan County; Thomas L. Blanton, Special Judge.

Action by R. C. Kirkland against Mabel M. Rutherford and another. From a judgment for defendants, plaintiff appeals. Affirmed.

Beall, Smith & Spencer, of Sweetwater, for appellant. H. S. Garrett, of San Angelo, for appellees.

SPEER, J. R. C. Kirkland instituted this suit against Mabel M. Rutherford and her husband, J. M. Rutherford, in trespass to try title to recover 320 acres of land in Nolan county, being in effect an action for the rescission of a sale or exchange of such land for $7,100 of the capital stock of the Rutherford Mill & Elevator Company, a private corporation doing business at Chillicothe, the grounds for rescission being the fraudulent representations of the defendants concerning the value of the mill and elevator property. After issues duly joined the court submitted the case on the following special issues, which issues the jury answered or failed to answer as indicated:

"Q. 1. Did Mrs. Mabel M. Rutherford authorize J. M. Rutherford to negotiate a trade

for her mill stock with the plaintiff for the land in controversy? A. No.

"Q. 2. Did the consummation of the deal for the exchange of properties result from negotiations had between the plaintiff and J. M. Rutherford, or between the plaintiff and Mrs. Mabel M. Rutherford, or between the plaintiff and both J. M. Rutherford and his wife, Mrs. Mabel M. Rutherford? A. Mrs. Mabel M. Rutherford and R. C. Kirkland.

"Q. 3. Did J. M. Rutherford, prior to the consummation of the deal for the exchange of properties, represent to the plaintiff that the Rutherford Mill & Elevator Company was entirely solvent and a going concern, that it was capitalized at $45,000 in stock, all of which was paid up, and that said concern was worth upon the market in Chillicothe par, or 100 cents on the dollar? A. Yes.

"Q. 4. If you should answer the above question 3 in the affirmative, then answer, Did Mrs. Mabel M. Rutherford, at the time she executed such contract with the plaintiff, know that such representations, if any, had theretofore been made by her said husband, J. M. Rutherford, to the said plaintiff? A. No.

"Q. 5. If you should answer question 3 in the affirmative, then answer, Were said representations, if any, made by said J. M. Rutherford to said plaintiff true or false? A. False.

"Q. 6. If you should answer question 3 in the ·affirmative, then answer, Were the representations made by said J. M. Rutherford, if any, relied upon by plaintiff, and did same induce the plaintiff to consummate said deal? (No answer.)

"Q. 7. Did Mrs. Mabel M. Rutherford, prior to the consummation of the deal for the exchange of properties, represent to the plaintiff that the Rutherford Mill & Elevator Company was entirely solvent and a going concern, that it was capitalized at $45,000 in stock, all of which was paid up, and that said concern was not in any wise indebted or incumbered, and that such stock was worth upon the market at Chillicothe par, or 100 cents on the dollar? A. No.

"Q. 8. If you should answer question 7 in the affirmative, then answer, Were said representations, if any, made by said Mabel M. Rutherford to said plaintiff true or false? (No answer.)

"Q. 9. If you should answer question 7 in the affirmative, then answer, Were the representations made by the said Mrs. Mabel M. Rutherford, if any, relied upon by the plaintiff, and did same induce the plaintiff to consummate said deal? (No answer.)

"Q. 10. Was the mill stock which was traded for the land in controversy the separate property of Mrs. Mabel M. Rutherford? In connection with the above I instruct you that if when said deal was made J. M. Rutherford then voluntarily gave to his wife $2,100 of stock theretofore held in his own name for the purpose of enabling her to acquire said land as·her separate property, then such stock would be her separate property. A. Yes.

"Q. 11. Did Mrs. Mabel M. Rutherford and her husband, J. M. Rutherford, fraudulently conspire together for the purpose of making false representations to plaintiff concerning the mill stock and to thereby induce plaintiff to consummate said deal? (No answer.)

"Q. 12. In consummating said deal for the exchange of properties, did plaintiff rely upon his own business judgment? A. No.

"Q. 13. In addition to representations, if any, made by either J. M. Rutherford or Mrs. Mabel M. Rutherford, did the plaintiff make any investigation himself concerning the nature and probable value of the stock he was negotiating for? A. Yes.

"Q. 14. If you should answer question 13 in the affirmative, then answer, Did the plaintiff in consummating said deal rely upon his own investigation, if any? A. No."

Upon the answers thus returned the trial court entered judgment for the defendants, and the plaintiff has appealed.

First we hold that the evidence is sufficient to support the findings of the jury in response to the special issues submitted to them. While on the material issues they are contrary to appellant's testimony, they nevertheless are supported by Mrs. Rutherford's testimony, stating specifically that she informed appellant of the existence of the debt and lien for which the mill property was afterward sold out.

[1, 2] Most of appellant's assignments ·complain of the court's rulings in admitting or rejecting evidence, but these rulings become immaterial in view of the issues under the pleadings and of the findings above set out. To be more specific, the first and second assignments complain that the court erred in excluding certain testimony which would have tended to show that G. F. Wright and H. M. Scarbrough were agents of Mrs. Rutherford, and as such made certain advances and representations to appellant. Appellant's petition, however, nowhere charges that appellees' representations were made through agents, but specifically alleges that the false representations were made by the defendants. Moreover, there is no evidence in the record to justify the inference that the persons named were· agents of Mrs. Rutherford. Such agency cannot, of course, be proved by the mere fact that these persons approached appellant with reference to the trade. Such conduct proves nothing. Agency cannot be proved by the mere declarations or acts of the agent alone.

[3, 4] It is next complained the court erred in refusing to permit appellant to testify in regard to investigations made by him into the condition of the affairs of the Rutherford Mill & Elevator Company after the filing of this suit because his testimony would have shown that he had no knowledge of the true condition of the company prior to the time of filing his petition. But there was no issue of laches or limitation, and, besides, it is immaterial if appellant was deceived in regard to the property if appellee Mrs. Rutherford was in no manner responsible for his being deceived.

A number of other assignments, namely, the fourth, fifth, and seventh, also relate to rulings in excluding evidence, the purpose of which was to show that the mill and elevator property was of less value than had been represented to appellant. These, too, become immaterial in the absence of a finding that Mrs. Rutherford misrepresented its value.

[5, 6] There is no merit in the eighth assignment complaining of the court's action in holding a night session when appellant's leading counsel through illness was unable to be present and conduct his suit. The bill fails to show what, if anything, transpired at the night session, but does show that appellant

was represented by two other attorneys, and it is impossible for us to say that any harm could have resulted to his interests by the course pursued. Our conclusion that the evidence supports the findings of the jury virtually disposes of every question raised on the appeal. Under those findings no other judgment than one for appellees could have been rendered. The very gist of appellant's cause of action was false and fraudulent representations concerning the value of the mill and elevator property exchanged to him for his land, upon which he relied to his damage. While the findings do show that this property was misrepresented to him by appellee J. M. Rutherford, they further show that he was not authorized to represent Mrs. Rutherford, and that the exchange in fact resulted from negotiations between Mrs. Rutherford and appellant, and that Mrs. Rutherford made no false representations concerning the mill property. The jury having found that Mrs. Rutherford made no false representations, and having failed to find that the false representations made by her husband were authorized by her, necessarily there could be no judgment rendered against her. Moreover, the jury find that J. M. Rutherford made false representations concerning the value of the mill property, yet they fail to find that appellant ever relied upon these representations. A judgment for appellant would have found no support in the verdict.

We find no error in the judgment, and it is affirmed.