T. J. RUSSELL v. INDUSTRIAL TRANSPORTATION COMPANY.

No. 3795.    Decided May 30, 1923, January 30, 1924.

(251 S. W., 1034, 258 S. W., 462.)

**1.—False Representations—Sale of Corporate Stock—Facts or Opinions.**

Representations made by agents of a corporation in selling its corporate stock, that they were acquainted with its affairs and business; that the stock was then worth more than the price paid and would be worth 25 per cent. more by a certain date; and that it would yield 8 per cent. in dividends; if knowingly false and relied on by a purchaser ignorant of their falsity, were representations of fact, not of mere opinion, and ground for cancelling the sale and recovering back the purchase price. (Pp. 446-448).

**2.—Same—Purchaser's Knowledge.**

It was not to be presumed against the purchaser of the stock that he knew that the agents selling it could not themselves know what it would be worth at a future date, nor that the corporation would not comply with their representations that it would take it back and return the price if the purchaser was dissatisfied. (Pp. 446, 447).

**3.—Same—Promissory False Representations.**

Promises made without intention of fulfillment (that the corporation would cancel the sale of its stock and take it back ·at the price paid if the purchaser proved dissatisfied) if knowingly false and relied on by the purchaser would constitute such false representations as entitled the latter to rescission and recovery back of the price paid. (P. 448).

**4.—False Representations—Injury—Rescission.**

To entitle a purchaser to rescind a contract of sale because induced by false representations, it must appear that he suffered injury thereby; and this is not shown in the absence of findings that the property at the time of the sale was worth less than the price paid. (P. 449).

**5.—Pleading—Agency.**

A petition seeking rescission of a contract of sale because induced by false representations of defendant's agents in selling it was not subject to demurrer for failure to give the names of such agents where it alleged that their names were unknown to plaintiff but known to defendant. (P. 449).

BY SUPREME COURT ON MOTION FOR REHEARING.

**6.—Contract—Rescission—Injury.**

Some injury to plaintiff must be shown in order to entitle him to rescind a contract on account of fraud. Moore v. Cross, 87 Texas 561;

Hoeldtke v. Horstman, 128 S. W., 646; Hopkins v. Woldert Groc. Co., 66 S. W., 63; Caffall v. Bandera Tel. Co., 136 S. W., 105; approved. (Pp. 449-456).

#### 7.—Same—Findings as to Injury.

See special findings showing a purchase of corporate stock induced by fraudulent misrepresentations as to its present and prospective value, but held insufficient to show that the purchaser was injured thereby. (Pp. 455, 456).

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Hopkins County.

Russell sued the Industrial Transportation Co. and recovered judgment for rescission of a contract for purchase of defendant's stock by him, with recovery of the cash paid and cancellation of his note given for part of the purchase price. On defendant's appeal the judgment was reversed and the cause remanded (238 S. W., 1030). Russell thereupon obtained writ of error. The case being referred by the Supreme Court to the Commission of Appeals, Section A, for its opinion, judgment was entered on its recommendation affirming the reversal and remand by the Court of Civil Appeals. A motion for rehearing having been filed by plaintiff in error, the case was withdrawn from the Commission of Appeals by the Supreme Court, which by its opinion thereon adhered to the judgment previously entered. The opinions of both the Commission of Appeals and of the Supreme Court are here published.

*Connor & Ramey,* and *Clark & Sweeton,* for plaintiff in error.

The statements of appellant's agents as to the value of the stock were not the mere opinions of said agents, but were statements of fact, and, if untrue, formed the basis of an action for fraud. Buchanan v. Burnett, 119 S. W., 1141; McDonald v. Lastinger, 214 S. W., 829; Massirer v. Milam, 223 S. W., 302; Barber v. Keeling, 204 S. W., 139.

If, however, the representations relied on by plaintiff in error and found by the jury to have been made were opinions merely, yet, as they were found by the jury to be false and known by the agents of defendant in error to have been false when they made them, and made for the purpose of deceiving plaintiff in error and inducing him to make the contract, and as they were relied upon by plaintiff in error, they were, nevertheless, actionable and formed the proper basis for the judgment in plaintiff in error's favor cancelling the contract. Edward Thompson Co. v. Sawyers, 234 S. W., 873; Texas Co-Operative Investment Co. v. Clark, 216 S. W., 220; Riggins v. Trickey, 102 S. W., 921; International etc. Ry. Co. v. Shuford, 81 S. W., 1194; 26 C. J., Sec. 110, p. 1217; 14 C. J., Sec. 879, p. 609; Dox v. R. E. Lomax Co., 156 Pac., 874; Montgomery So. Ry. Co. v. Matthews, 54 Am. Rep., 60; 12 R. C. L., Sec. 16, p. 248; Oneal v. Weisman, 88 S. W., 291;

20 Cyc., pp. 60-61; 14 Am. & Eng. Ency. of Law, pp 123, 125-126; King v. McAdams, 145 S. W., 1032; Zundelowitz v. Waggoner, 211 S. W., 598; Wyatt v. Chambers, 182 S. W., 16; Mid-Continent Life Ins. Co. v. Pendleton, 202 S. W., 769; 12 R. C. L., Sec. 23; McDonald v. Lastinger, 214 S. W., 829; Zavala Land & Water Co. v. Tolbert, 184 S. W., 528-529.

The plaintiff in error had two remedies open to him, one, to sue for his damage, and the other to sue for a recission of the contract. If he had selected the first remedy, it would have been necessary for him to have shown that he had sustained some damage. Inasmuch as he chose to bring his cause of action for rescission, it was only necessary for him to show that material misrepresentations had been made to him upon which he relied. Spreckels v. Gorrill, 152 Cal., 383, and authorities therein cited; Mather v. Barnes, 146 Fed., 1004; Kanaman v. Hubbard, 160 S. W., 304; Sargent v. Barnes, 159 S. W., 366; George v. Hesse, 100 Texas, 44, 93 S. W., 107.

*W. M. Pierson*, for defendant in error.

The alleged representations of the alleged agents were merely promissory in their nature as to what would thereafter be done and were not the basis of an action for fraud. McCoy v. Bankers Trust Co., 200 S. W., 1138-1141; Bigham v. Bigham, 57 Texas, 238; Downes v. Self, 28 Texas Civ. App., 356; Wegerer v. Jordan, 101 Pac., 1066; Brooks v. Pitts, 100 S. E. (Ga.) 776.

MR. JUDGE RANDOLPH delivered the opinion of the Commission of Appeals, section A.

This suit was brought by T. J. Russell, hereinafter called plaintiff, against Industrial Transportation Company, hereinafter called defendant, in the district court of Hopkins County. From a judgment in favor of plaintiff in the trial court the defendant appealed to the Court of Civil Appeals. On hearing by that court, the judgment of the trial court was reversed and remanded to the trial court.

The suit was for the cancellation of a contract for the purchase of stock in the defendant company, executed by the plaintiff, and also to cancel a note for $1000.00 given to defendant by plaintiff, and to recover $1000.00 paid to defendant by plaintiff.

As his basis for suit, the plaintiff in his petition alleged the following as his grounds for the cancellation of such contract and note:

"For cause of action, plaintiff alleges that heretofore to-wit: On or about the 15th day of July, A. D. 1920, the defendant, acting by and through its duly authorized agents, who were acting within the scope of their employment, whose names are to plaintiff unknown, but who are well known to the defendant, sold to plaintiff, at his residence in Hopkins County, 200 shares of its stock at $10.00 per share,

aggregating the sum of $2,000.00; that plaintiff paid to said agents of the defendant therefor the sum of $1,000.00 cash, and executed his note for $1,000.00 payable to himself and endorsed by him, due November 15, 1920, and delivered the same to defendant's said agents, which note, defendant now owns and is demanding payment of same of plaintiff; that plaintiff executed a contract for the purchase of said stock at said time and was induced to so execute said contract for the purchase of said stock, and to, in fact, purchase the same from the defendant, by and through certain material misrepresentations which defendant's said agents fraudulently made to him at the time the contract of purchase was entered into; that said material misrepresentations were as follows, to-wit:

(a) Said agents represented that they were familiar with the value of defendant's stock, knew defendant's business and its avenues and opportunities for making money, and by reason of their intimate close connection with the defendant, they knew what its said stock was worth on the market, and that at the time plaintiff was induced to execute said contract of purchase, they represented to the plaintiff that defendant's said stock was worth on the market more than its par value and that on and after August 1, 1920—about fifteen days from the date plaintiff was induced to execute said contract of purchase—said stock would be worth on the market 25% more than the amount plaintiff would have to pay for the same, to-wit: its par value, and that if plaintiff purchased the stock at the price at which they were offering it to him, to-wit: its par value, he would be buying it for less than its then market value, and on and after August 1, 1920, he would be able to sell it on the market for 25% more than he would have to pay for it; that said agents further represented to plaintiff at said time, that their statements with reference to the market value of said stock at that time and what its market value would be on and after August 1, 1920, were based upon their intimate knowledge of said stock's value and of the defendant's business and its ability to make money, and that they guaranteed and warranted to the plaintiff that said stock would be worth on the market on and after August 1, 1920, 25% more than he would have to pay for it at that time.

(b) Said agents further represented to the plaintiff at said time, that the defendant was doing a large volume of business and was making large sums of money for its stockholders and that said agents were in position to know, because of their intimate knowledge of defendant's business, that said stock would pay to plaintiff large dividends on his investment and that they guaranteed to plaintiff that said stock would pay him at least an 8% dividend annually from the earnings of the defendant's business, and

(c) Said agents further represented to the plaintiff at said time, that the defendant intended, within a reasonable time, to establish a large business in the City of Winnsboro, Wood County, Texas, and

expected to put into said business about 75% of the money raised by the defendant in the community surrounding the City of Winnsboro from the sale of its stock; that by reason of the large business it expected to conduct in said City of Winnsboro, it intended to sell its goods, wares and merchandise for less money than the merchants engaged in a similar business at said point could sell like merchandise, and this because of the large volume of business it would do, and the entire trading community, as well as the stockholders of said Company, would derive the benefits therefrom.''

The answer to this petition included the following: a general demurrer, special exceptions raising objections to the petition that the alleged agents who were claimed to have represented defendant in the transaction were not named; that the alleged false representations were simply promises to do something in the future, and were matters of opinion only, and, further, answers to the merit.

The case was submitted to the jury upon special issues, in part as follows:

1. Did Johns and Londergon, alleged representatives of defendant, represent to plaintiff that they had intimate knowledge of the value of the stock in controversy and the defendant's business? To which the jury answered ''Yes.''

2. Did the said Johns and Londergon represent to plaintiff that the existing condition of the business at that time was such that they could and did guarantee that said stock would be worth on the market after August 1, 1920, 25% more than he was paying for same? To which the jury answered ''Yes.''

3. Were such representations in reference to the condition of business true? To which the jury answered ''No.''

4. Did said agents know that such statements were not true? To which the jury answered ''They did.''

5. The jury found that the plaintiff relied upon said representations and was induced thereby to purchase the stock.

6. The jury also found that said representations were made for the purpose of inducing plaintiff to purchase the stock.

7. The jury found that said agents represented to plaintiff that the existing condition of the business at that time was such that they could and did guarantee that he would receive annual dividends of at least 8%. on the amount invested by him in said stock.

8. That said representations with reference to the condition of the business were not true, and that said agents knew that they were not true at the time they made the same.

9. That plaintiff relied on said representations and was induced thereby to purchase said stock.

10. That said representations were made for the purpose of inducing plaintiff to purchase said stock.

11. That said agents represented to plaintiff at the time he purchased the same that said stock was then worth more than he was paying for it.

12. That plaintiff relied on these representations.

13. That said agents represented to plaintiff that in the event he should become dissatisfied with such stock, that said defendant company would refund to him the sum paid on such stock and cancel and return the note and contract.

14. That plaintiff relied on said representations and was induced thereby to purchase said stock.

15. That the reasonable market value of the stock in question on the first day of August, 1920, was unknown.

16. That the reasonable cash value of the stock at the time plaintiff purchased same was unknown.

17. That the reasonable cash market value of said stock at the present time (the time of the trial) was 55c on the dollar.

These numbers are not the numbers of the issues as submitted, but are arbitrary numbers given the findings by us.

The application for writ of error assigns the following errors alleged to have been committed by the Court of Civil Appeals, viz:

1. That the Court of Civil Appeals erred in holding that the false representations charged and proved were merely expressions of opinion and could not form a basis for the judgment of the trial court, cancelling the contract and note and for recovery of the money.

2. That said court erred in reversing said judgment of the trial court, because if such false representations are properly held to be mere expressions of opinion only, yet as they were found by the jury to have been false and known, at the time they were made by defendant's agents, to be false and they were made for the purpose of deceiving plaintiff and inducing him to make the contract and were relied on by him, that they were nevertheless actionable and formed the proper basis for such judgment of the trial court.

The defendant having affirmed the contract of its agent by retaining the money and, in this suit, seeking judgment on the note, the question as to whether or not the parties selling the stock to the plaintiff were its agents is not in the case.

The holding of the Court of Civil Appeals that the false representations alleged and proved were mere opinions of the agents, that is, "trade-talk," appears to be largely based upon the following reasonings of that court:

"No matter how intimately appellant's agents were acquainted with its business, and the value of its stock at the time they made the representations, they could not, and apparently must have reasonably known they could not, know what the stock would be worth after August 1, 1920, nor the dividends which would be paid out; nor

could they know that in the event appellee became dissatisfied with his purchase, appellant would cancel his note and return his money he paid for the stock.''

We do not think the plaintiff should be so heavily burdened with presumption of knowledge on his part and that such knowledge ought not be charged against him.

''As a general rule, if a vendor of property, in order to induce a sale, makes positive assertions as to any material fact which is peculiarly within his own knowledge and of which the purchaser is ignorant, such as the title, area, boundaries, location, rent, profits, or income, or incumbrances, may be relied on by the purchaser without further investigation; and if the statements are false and fraudulent and cause damage to the purchaser he may hold the vendor liable in damages. Nor need the fact be one exclusively within the vendor's knowledge. Upon this principle positive misrepresentations of territorial rights under patents as to the merits and value of the rights to be sold, were held not to fall within the rule of *caveat emptor.''* 20 Cyc. pp. 55-57.

If the agents of the defendant, claiming to know all about the business of the company, the falsity of which claim the plaintiff could not know, made the representations and statements complained of, the plaintiff had the right to rely on them. Sales agents who are selling stock are certainly presumed to have been supplied with all information as to the company's business and resources necessary to enable them to intelligently present their business to possible purchasers. While it is true that such agents sometimes depart from their instructions and exceed their authority in making representations, yet when they are acting within the apparent scope of their employment, when they do depart from their instructions and when they do falsify the facts, it is proper that their employer who has put them before the world as his agent for the transaction of his business, should suffer from their dereliction rather than the public who are preyed on.

''In every such case, the principal holds out his agent as competent and fit to be trusted, and thereby, in fact, he warrants his fidelity and good conduct within the scope of his agency.'' Storey on Agency, Secs. 127, 135, 137, 452.

That the representations made were not matters of opinion as indicated above, is also supported by the following authorities: McDonald v. Lastinger, 241 S. W., 829; Massirer v. Milam, 223 S. W., 302.

The statements which the jury found that defendant's agents made were statements of fact, in part are as follows: that they were intimately acquainted with defendant's business; that upon such knowledge of defendant's business they could and did guarantee that such stock would be worth on the market after August 1, 1920, 25% more than he was paying for same; that plaintiff would receive annual

dividends of at least 8% on the amount invested by him; that the stock was worth more than he was paying for it.

In the case of Buchanan v. Burnett, 102 Texas, 492, 132 Am. St., 900, 119 S. W., 1142, in which case it appears that Buchanan had represented that he had a good title to the land which he was selling to Burnett, it was insisted that the statement made by Buchanan was only the expression of an opinion, and passing upon this question our Supreme Court held, that while the statement made by Buchanan to Burnett embodied a conclusion drawn from the facts relative to the title, it was in fact a representation that the facts which would constitute a good title to the land existed; that it was not an opinion as to the legal effect of known facts and muniments of title, for which the seller would not be responsible. In the case at bar the statement of the agents of defendant that the dividends would amount to 8% and that the stock would be worth 25% more after August 1, 1920, embodied a conclusion drawn by them from facts which they claimed to know by reason of their knowledge of defendant's business, the falsity of which plaintiff could not know.

"*Tendency of Modern Decisions.* In cases where positive fraudulent misrepresentations have been made by the vendor the modern cases show a strong tendency either to relax the doctrine of *caveat emptor* or to refuse to extend it further than it has been carried by previous decisions even with respect to ''dealers' talk;'' the courts taking the view that a vendor guilty of a falsehood made with intent to deceive should not be heard to say that the purchaser ought not to have believed him.'' 20 Cyc. 62 (d).

But a party may become liable for false representation made in the form of promises for future returns. If the representations relied on by plaintiff and found by the jury to have been made for that purpose were merely opinions, or promises, yet if they were known to be false by the agents when they made them, and were made for the purpose of deceiving plaintiff and inducing him to make the contract, they were nevertheless actionable, having been relied upon by plaintiff. This proposition has been often stated and approved in the opinions of this court, but we cite only the following authorities:

The Supreme Court, speaking through Justice Greenwood, in the case of Edward Thompson Co. v. Sawyers, 111 Texas, 378, 234 S. W., 874, say:

"Promises made without intention of fulfillment, in order to induce others to make contracts, are as culpable and as harmful as are willful misrepresentations of existing facts. Hence contracts may be avoided alike for such fraudulent promises and for such misrepresentations.''

Also see 26 C. J., p. 1233; 14 C. J., sec. 879; 12 R. C. L., sec. 16, p. 248; Texas Co-operative Investment Co. v. Clark, 216 S. W., 220; Montgomery So. Ry. Co., v. Matthews, 77 Ala., 357, 54 Am. Rep.,

It is elementary that where a false representation is charged to have misled a party into signing a contract, he must not only show the falsity of the representations, that he was misled by such and induced to sign the contract thereby, but he must also show that he has been damaged and the extent of his damages. The jury in this case found that the value of the stock at the time plaintiff entered into the contract to purchase it was unknown. Consequently there is no basis upon which to determine whether or not plaintiff was damaged and the case must be reversed for the lack of such proof or finding of the jury.

Our discussion of plaintiff's assignments of error, above, largely determines the disposition of defendant's assignments in the Court of Civil Appeals and we find no assignment presented by defendant which is not so covered or which presents reversible error, or which presents error likely to arise on another trial, hence we overrule them.

The defendant's exceptions to plaintiff's petition because the names of the alleged agents of defendant are not given should not have been sustained. The plaintiff alleged that the names of such agents were not known to him, but were known to the defendant. It may appear from the evidence that this allegation was in fact false, but this issue cannot be made an issue of law on the face of the pleading.

We therefore recommend to the Supreme Court that the judgment of the Court of Civil Appeals reversing the case be affirmed and that this cause be remanded to the trial court for another trial under the instruction given in this opinion as far as applicable.

### ON MOTION FOR REHEARING.

MR. JUSTICE PIERSON delivered the opinion of the Supreme Court.

This case is now before this Court upon motion for a rehearing. Upon recommendation of the Commission of Appeals in an opinion written by Judge H. C. Randolph, of Section A, (251 S. W., 1034), this Court reversed the holdings of the Court of Civil Appeals on the issue of actionable fraud, but remanded the cause to the District Court for new trial on the proposition that plaintiff in error must show that he had been damaged, and the extent thereof.

In his motion for a rehearing, plaintiff in error vigorously insists that a contract secured by fraud may be rescinded without a showing that the aggrieved party has suffered any injury or loss. On account of the importance of the question involved, the cause was withdrawn from the Commission and set for argument before this Court.

For a full and clear statement of the case, see the original opinion in 251 S. W., 1034. It is not deemed necessary to restate or to discuss any issues in the case, except the one raised by plaintiff in error on motion for a rehearing, and for that purpose we quote the following paragraph from Judge Randolph's opinion near its conclusion:

113 Tex.—29.

"It is elementary that where a false representation is charged to have misled a party into signing a contract, he must not only show the falsity of the representations, that he was misled by such and induced to sign the contract thereby, but he must also show that he has been damaged and the extent of his damages. The jury in this case found that the value of the stock at the time plaintiff entered into the contract to purchase it was unknown. Consequently there is no basis upon which to determine whether or not plaintiff was damaged, and the case must be reversed for the lack of such proof or finding of the jury."

Upon investigation, we find the general and correct rule to be that some injury must be shown in an action to rescind a contract for fraud.

In the Bill of Rights, Section 13, we find the following: "All courts shall be open; and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

Judge Simkins, in his work on Contracts and Sales, defines fraud as follows: "Fraud is an act or concealment involving a breach of legal duty, trust or confidence justly reposed, and from which injury results to another, or by reason of which an undue and unconscientious advantage is taken of another."

Thus, actionable fraud is fraud from which injury results. Based upon that fact, Texas pursues the equitable rule that "whether misrepresentation is intentionally or innocently made, as far as the effect is concerned, it is the same and equally avoids the contract."

In discussing the essential elements of fraud, the existence of which are "conditions upon which a court of law will refuse to enforce performance, or a court of equity will rescind on the ground of fraud," Judge Simkins says:

"*Sixth. It is essential to support the action that the complaining party must be misled to his injury, otherwise it would be 'damnum absque injuria.'* Bremond v. McLean, 45 Texas, 10; Moore v. Cross, 87 Texas, 561, 29 S. W., 1051, and authorities cited; Blythe v. Speake, 23 Texas, 436; Hopkins v. Woldert, 66 S. W., 63; Ming v. Woolfolk, 116 U. S., 602, 2 Sup. Ct., 489, 29 L. Ed., 740; Caffall v. Banders Tel. Co., 136 S. W., 105; Lissner v. Stewart, 147 S. W., 610."

In the case of Moore v. Cross, supra, Judge Brown, after stating and discussing the facts, says:

"The proof does not show that the property was worth less without these improvements than it would have been with them, nor that plaintiff would have derived any pecuniary benefit from their construction.

"If the promises of Moore be considered as representations fraudulently made, they belong to that class of frauds for which there is no redress in courts, because there was no pecuniary injury resulting from them, and courts do not undertake to deal with the breach of moral obligations. Big. on Fraud, p. 540; Lemon v. Hanley, 28 Texas, 226; Bremond v. McLean, 45 Texas, 17."

Judge Hodges, in the case of Haeldtke v. Horstman, 128 S. W., 646, says:

"Courts of equity will not interpose to rescind a contract for fraud, except where it becomes necessary to relieve the complaining party against some injury. Atlantic Delaine Co. v. James, 94 U. S., 207, 24 L. Ed., 112; Henninger v. Heald, 52 N. J. Eq., 431, 29 Atl. 190; Wenstrom, etc., v. Purnell, 75 Md., 119, 23 Atl., 134; Bomar v. Rosser, 131 Ala., 215, 31 South., 430; Hairalson v. Carson, 111 Ga., 57, 36 S. E., 319; 2 Pomeroy Eq. Jur., § 899."

Judge Key, in the case of Hopkins v. Woldert Grocery Co., 66 S. W., 63, held plaintiff's petition insufficient because it failed to allege injury as a result of the fraudulent misrepresentation. The same principle is supported in Caffall v. Bandera Tel. Co., 136 S. W., 106.

Mr. Pomeroy very clearly states the correct rule in the following forceful language:

"The statement of facts of which it (fraudulent misrepresentation) consists must not only be relied upon as an inducement to some action, but it must also be one material to the interest of the party thus relying and acting upon it that he is pecuniarily prejudiced by its falsity—is placed in a worse position than he otherwise would have been. The party must suffer from some pecuniary loss or injury as the natural consequence of the conduct induced by the misrepresentation. In short, the representation must be so material that its falsity renders it unconscientious in the person making it to enforce the agreement or other transaction which it has caused. Fraud without resulting in pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal. Courts of justice do not act as mere tribunals of conscience to enforce duties which are purely moral."

Thus we see that the rule is fairly well settled in Texas, and the general rule announced by that excellent authority Mr. Pomeroy, to be that it is essential that some injury or damage be shown in order to rescind a contract for fraud.

Of course, as stated by Judge Roberts in Blythe v. Speake, 23 Texas, 437: "A party, defrauded in a contract, has his choice of remedies. He may stand to the bargain and recover damages for the fraud, or he may rescind the contract and return the thing bought and receive back what he paid." This in no wise affirms the proposition that equity will cancel the contract in the absence of injury, but infers injury, and on account thereof will relieve against the contract in its entirety at the election of the injured party. In the contemplation of equity, for one to be defrauded in the making of a contract means that he was injured, or defrauded to his damage.

Black on Rescission and Cancellation, in Section 567, announces the rule in the following language:

"In order to obtain a rescission of a contract, it is necessary for the complaining party to show that he has suffered actual loss or

injury by reason of it, or that he is threatened with substantial loss or injury which will fall upon him if the contract is not annulled.''

In Section 37 he gives the reasons for the rule as follows:

''Resulting Loss or Damage to Defrauded Party.  As a general rule, a fraud which causes no injury is not legally cognizable; and it is an essential part of the definition of fraud as a cause for the intervention of equity, or for a party to take steps to rescind a contract or other obligation into which he has entered, that it should have resulted, or that it will result, in some loss, damage, detriment, or injury to him.  Neither courts of law nor courts of equity exercise their powers for the purpose of enforcing moral obligations or correcting unconscientious acts which are not followed by any loss or damage; fraud and injury must concur to furnish a ground of judicial action.  In the case of executed contracts, the loss, if any, will naturally have occurred before steps are taken to rescind.  But in the case of executory contracts, the rule does not mean that the party complaining should have sustained actual loss at the moment of rescinding or filing his bill for rescission, but it is enough to show that such will be the inevitable result if the contract is completed according to its terms.  In the State of Louisiana this has been incorporated into the Code, but it would probably be recognized everywhere as a sound principle of equity jurisprudence.''  *  *  *  ''If damage is shown, the extent of the injury occasioned by the fraud will not be inquired into in a suit to rescind the contract.  And the injury need not be accurately measurable in money. but it is sufficient if it is of a pecuniary nature.''  See authorities cited by him.

With one exception, all the authors that we have examined have announced the rule as above stated without qualification.

Cyc, 9th Vol., p. 431, states it briefly, but clearly:

''Damage Must Be Shown.  As in an action for deceit, so also in order to avoid a contract for false representations, it is essential that the party complaining shall have been prejudiced or injured by the fraud.''

Elliott on Contracts, Vol. 1, § 91, says:

''Before fraud will give rise to an action for deceit, or for rescission, or before a sufficient defense can be predicated thereon in an action on the contract, the fraud practiced must result in injury.  The principle of *damnum absque injuria* applies.''

Of course, as is pointed out in Elliott and others, the word ''damage'' should not be restricted to a monetary loss; that is, it need not be measured in money, but it is sufficient if the defrauded party has been induced to incur legal liabilities or obligations different from that represented or contracted for.  In an action for rescission, the amount of the damage is immaterial, provided it is substantial.

Williston on Contracts says:

''It is not necessary that actual damage shall have resulted from fraud in order to justify rescission.''

He cites only one case, that of Barnes v. Century Savings Bank, 149 Ia., 367, 128 N. W., 541. The holding in that case is properly summed up in the syllabus as follows:

"False representations knowingly made with intent to deceive, or a concealment of material facts with like intent to induce one to incur an obligation which he would not otherwise have made are grounds for rescission, although no actual damage results."

The facts of the case showed that the complaining party had by fraudulent representations been induced to incur an obligation which but for same he would not have incurred. He had not actually suffered damage, but would do so unless the contract was cancelled. Therefore, injury was shown.

The case first presented and most relied on by plaintiff in error as supporting his proposition that no injury need be shown is that of Spreckles v. Gorrill, 152 Calif., 383, 92 Pac., 1011, by the Supreme Court of California. This case does not support the contention. The question under consideration was not whether rescission could be had without a showing of injury, but *whether or not damage or injury was shown* by the facts of the case, and at the threshold of the discussion the court says:

"*That fraud which has produced, and will produce, no injury will not justify a rescission, nor support an action either for rescission or damages, is an established principle of law and equity.* (Italics ours). But there is no rule that the injury must be of such a nature that it can be accurately measured in money. And we know of no rule of pleading which, in an action based upon a rescission between the parties or seeking to enforce such rescission, requires a statement that the fraud complained of had caused or would cause a specific amount of damages. It may be conceded that it must be shown that the plaintiff, by reason of the fraud, suffered an injury of a pecuniary nature, that is, an injury to his property rights, as distinguished from a mere injury to his feelings, but it will be sufficient if the facts alleged show that material injury will necessarily ensue from the fraud. although the amount of the pecuniary loss is not stated. Such injury is shown by the facts alleged in the present case."

It then quotes with approval the following by Mr. Pomeroy:

"If any pecuniary loss is shown to have resulted, the court will not inquire into the extent of the injury; it is sufficient if the party misled has been very slightly prejudiced, if the amount is at all appreciable." (2 Pomeroy's Equity Jurisprudence, § 898.)

It cites with approval Wainscott v. Occidental Association, 98 Calif., 257, 33 Pac., 88, wherein in cases of this kind it is held that the fraud is the essential thing; the *precise amount* of damage being of secondary importance. The holding of the court clearly was that damage or injury was shown, and the principle emphasized was that: "One who buys property is lawfully entitled to *all* the benefits of the pur-

chase; that is, to the full value of the property he buys regardless of the price he paid.'' And following the language last quoted, the court uses the following language, relied on by plaintiff in error:

''And it is a fundmental principle of the law of fraud that where one has, by false and fraudulent representations as to the quality of property, led another to believe it to be possessed of valuable qualities and thereby wrongfully induced the other to buy the property, presumably in order to obtain the benefit of property possessing those qualities, the seller will not be allowed to show as a defense to an action for such fraud, that the property, in its actual condition, was worth the price paid, or more.''

The court sums up its holding with:

''The real question in all such cases is whether or not the property, if it had been as represented, would have been of substantially greater value than its actual value in its real condition. The price actually paid is immaterial as an element in the cause of action, though it may be admissible evidence on the question of value.''

The issue decided was not that rescission could be had without a showing of injury, but how that injury may be shown, the measure of injury or damage.

The cases of Davis v. Butler, 154 Calif., 627, 98 Pac., 1047, and Mather v. Barnes, 146 Fed., 1004, are to the same effect.

In 1919 the Legislature of Texas enacted a statute bearing upon the rule or measure of damages in fraud cases. Complete Statutes, Art. 3973b.

We have examined a number of cases from California, and it appears that the Supreme Court of California has uniformly supported the general rule announced by the text writers and the courts of the various States of the Union, that some pecuniary injury must be shown.

The cases from the various States and from the Supreme Court of the United States are so numerous that we refrain from citing them. Many are cited by the text writers.

We can safely say that, at least, the great weight of authority supports the rule herein announced. We think the safe and true rule is that some pecuniary injury is essential to an action to rescind a contract for fraud, as announced by Mr. Pomeroy and as has been uniformly held by this and the other courts of Texas.

We have given more extensive discussion perhaps than the subject demands in view of the former holdings of the Texas courts and the great weight of authority, but it is justified by the fact that we withdrew the case from the Commission on this issue, and in view of the earnest argument by able counsel for plaintiff in error.

Plaintiff in error in his motion for a rehearing does not contend that the findings of the jury disclose injury to him. However, the circumstances under which the case now rests make it advisable that we should briefly review the findings.

The court propounded to the jury the question: ''Did Johns and Londergon represent to plaintiff at the time he purchased the same, that the stock was then worth more than he was paying for said stock?'' It answered: ''Yes.''

The court did not ask whether or not that representation was *true,* but asked what was the reasonable cash market value of the stock at the time plaintiff purchased same; to which the jury answered: ''Unknown.''

If the jury had been asked and had found that that representation was false, it might reasonably have been deduced therefrom that the stock at the time of purchase was not worth more than he was paying for it, and that he was injured, in that by fraud he was induced to buy stock of less value than represented and of less value than he contracted for. So, those questions and answers are of no avail to plaintiff in error.

. The court propounded to the jury the question: ''Did Johns and Londergon represent to plaintiff that they had intimate knowledge of the value of the stock in controversy and the defendant's business?'' It answered: ''Yes.''

Then,—''Did the said Johns and Londergon represent to plaintiff that the existing condition of the business at that time was such that they could and did they guarantee that said stock *would be* worth on the market after August 1, 1920, twenty-five per cent. more than he was paying for same?'' It answered: ''Yes.''

Then,—''Were such representations in reference to the condition of said business true?'' It answered: ''No.''

It will be observed that the finding of the jury was upon the existing condition of the business at the time the contract was made, and not the value of the stock at a future date. It was upon the latter view of the findings,—that is, that the representation was as to a fact *in futuro,* that the Honorable Court of Civil Appeals held the representations were merely expressions of opinion, and therefore not actionable as fraud.

The court asked the jury: ''What was the reasonable cash market value of the stock in question on the 1st day of August, 1920?'' And to this the jury answered: ''Unknown.''

It was not the guaranties included in the questions upon which plaintiff in error was seeking to recover. If so, his suit would have been for damages, and, of course, he would, of necessity, have had to show damage and its extent.

It is clear that the questions as to the representations and their falsity were for the purpose of proving fraud, and the questions as to the value of the stock at the time of the contract and on August 1st thereafter were for the purpose of proving that plaintiff in error was injured or damaged by the fraud.

While it is suggestive that it might be deduced from the finding

*o*

that the representation as to the existing condition of the business at the time plaintiff in error purchased the stock was false, that on August 1st thereafter the stock was not worth 25% more than he was paying for it, yet it must not be overlooked that this was *in futuro,* and the liability was based—and necessarily so, in order to maintain the action—upon the existing condition of the business at the time of the purchase of the stock; else, instead of representation, it would have been an expression of an opinion.

The court and the parties treated the questions as to the value of the stock at the time of the purchase and on August 1st as necessary to a showing of loss, though perhaps on motion for judgment the court and plaintiff in error took the view that loss or injury was not necessary to a rescission, fraud having been shown.

The questions having been asked, we can not, in support of the judgment, presume that the court found injury to plaintiff in error, or that the jury gave that effect to their answers to other questions. The only possible purpose of those questions that were answered "Unknown" was to develop the fact that plaintiff in error was injured, as he was suing only for rescission, and not to recover damages. Their answers could have been applied to no other use.

The original judgment herein rendered, remanding the cause to the District Court for a new trial, was correct. Therefore, the judgment of the Court of Civil Appeals, reversing the case, is affirmed, and the cause is remanded to the trial court for another trial in accordance with the original opinion herein and this opinion.

*Judgment affirmed and cause reversed and remanded.*