### BURNETT v. BOYER et ux. (No. 9642.)

(Court of Civil Appeals of Texas. Dallas. May 1, 1926. Rehearing Denied June 5, 1926.)

1. **Appeal and error** ⟐⟐1011(1)—**Reviewing court must treat conclusions of trial court on controverted issues of fact as if issues had been passed on by jury.**

In disposition of a controverted issue of fact in a trial before a court without a jury, reviewing court must treat conclusions reached, and give effect thereto, as if such issues had been passed upon by a jury.

2. **Vendor and purchaser** ⟐⟐119—**Purchasers held to have acted with reasonable promptness in disavowing contract and seeking cancellation.**

Purchasers *held* to have acted with reasonable promptness in disavowing contract and instituting proceedings for cancellation thereof, because of misrepresentations of vendor's agent that premises were not subject to overflow.

3. **Vendor and purchaser** ⟐⟐37(4)—**Purchasers held entitled to rely on vendor's representations that property purchased did not overflow.**

Purchasers *held* entitled to rely on representations made by vendor, acting through his agent, as to property purchased not being subject to overflow.

4. **Vendor and purchaser** ⟐⟐118—**Purchasers held entitled to rescission for fraud though permitting foreclosure where foreclosure did not take place until purchasers had abandoned property and sued for rescission.**

Purchasers *held* entitled to rescission for fraud though they failed to make monthly payments on note assumed by them, and had permitted foreclosure and sale of property to be made, where foreclosure did not take place until purchasers had abandoned property and sued for rescission.

5. **Vendor and purchaser** ⟐⟐306.

Where purchasers were entitled to rescind contract for fraud, vendor could not recover on purchase-money note.

6. **Principal and agent** ⟐⟐156—**That vendor did not in person make representations relied on by purchasers for rescission held immaterial, where agent of vendor, in making representations, acted within apparent scope of his authority, and assumed to quote what vendor had said.**

In suit to rescind contract of sale for misrepresentation that property was not subject to overflow, it was immaterial that vendor did not in person make representations relied on, where he had commissioned his agent to act for him, and clothed him with full authority and, in making representations, agent acted within apparent scope of his authority, and assumed to quote what vendor said to him.

7. **Vendor and purchaser** ⟐⟐37(4)—**Purchasers held not precluded from relying on representations of vendor's agent that land was not subject to overflow because they inspected property.**

Where vendor's agent misrepresented that property was not subject to overflow to induce purchasers to enter into contract, that purchasers had examined place and had opportunity to determine for themselves whether representation was true *held* not to preclude them from relying on representation.

8. **Contracts** ⟐⟐94(5)—**Fraud** ⟐⟐20.

It is only when one has knowledge of falsity of material statements and representations made before he acts thereon that he cannot rescind or recover damages.

#### On Motion for Rehearing.

9. **Principal and agent** ⟐⟐189(4)—**Material variance exists between allegations of misrepresentations made by defendant and proof of representations made by defendant's agent.**

Where plaintiffs, suing for cancellation, allege that false representations were made by defendant, and proof shows that representations were made by agent acting for defendant in making sale of property to plaintiffs, *held*, that there is a material variance.

10. **Appeal and error** ⟐⟐719(4).

Objection that there was material variance cannot be considered on appeal, when no assignment of error raises such question.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by C. L. Boyer and wife against W. G. Burnett, in which defendant filed a cross-action. Judgment for plaintiffs, and defendant appeals. Affirmed.

---

Beall, Worsham, Rollins, Burford & Ryburn, of Dallas, for appellant.

Eugene De Bogory and T. B. Reese, both of Dallas, for appellees.

VAUGHAN, J. · Appellees C. L. Boyer and wife, Zuma L. Boyer, filed their suit in the court below against appellant, W. G. Burnett, alleging, in substance, that the appellees purchased from appellant the tract of land described in their petition; that in the purchase they paid $300 cash, and assumed the balance due on a note of $1,180, payable to J. H. Furneaux in installments of $20 per month, and executed to appellant a note in the sum of $1,520, payable in installments of $30 per month; that, in addition to the $300 in cash, they had paid the sum of $120 to appellant, being four installments on note executed to him, and had paid to Furneaux the sum of $100, being five installments on the note assumed, and that they had expended for garden seed, plowing, lanterns, garden equipment, and expense of blocking, leveling, and raising the house on the tract of land sums aggregating $239.40. They further alleged that appellant represented to appellees that the tract of land purchased by them was free from overflow; that he had lived thereon and occupied same as his home for several years; that the land was not submerged at any time while appellant lived thereon; and that he had never heard of the land being submerged, while, as a matter of fact, appellant had knowledge that said tract of land on several occasions had been overflowed with water; and that the appellees relied on such representations.

Appellees further alleged that in April, 1923, they determined that the land was subject to be submerged by water, and disaffirmed the contract and abandoned said premises. Appellees prayed for judgment for rescission and cancellation of the deed and note executed by them, as well as the cancellation of the assumption of the payment of the note payable to Furneaux, and for a personal judgment for the several sums of money paid out by appellees as alleged by them.

Appellant answered by general denial and by special plea that appellees were not entitled to rescission, because, prior to the time the transaction was finally closed and the deed delivered, they had occupied the premises for more than two weeks, and had been informed of the conditions, especially that the place was subject to overflow, and that the property was situated between the forks of a creek, and so located that any one seeing the property would necessarily know that it was subject to overflow, and that, after acquiring knowledge of such facts, the appellees continued to make their payments and to reside on the property and assert ownership thereto, and to exercise dominion over same to the exclusion of appellant, cultivating the land, planting a garden, and continued such possession until more than a month after suit was filed; and, further, that appellees, after taking possession of the property, and after full information of the facts on which rescission is sought, undertook to raise the house and put it on a new foundation and let the house fall, greatly injuring and damaging it; and, further, that they permitted the holders of the first lien note, the payment of which they had assumed, by reason of default in payment, to foreclose same, and the property was sold, they destroyed trees, injured the building, made improvements, changed location of the buildings and fences, so that it is impossible for appellees to place appellant in statu quo, and therefore were not entitled to rescission.

Appellant, by way of cross-action, pleaded that the appellees had executed and delivered to him their note in the sum of $1,520; that default in payment of said note had been made, except as to the first four installments due thereon, and prayed for judgment against appellees for the amount of principal, interest, and attorney's fees due on the note.

To the cross-action appellees answered by way of general denial. The case was tried by the court without the intervention of a jury, and judgment rendered decreeing cancellation of the deed and note held by appellant, and also personal judgment against appellant for the sum of $599.40, being the $300 cash paid on delivery of deed and $125, a portion of the installment payments made on the two notes, and $174.40, found by the court to have been expended on the property during the time appellees occupied same. From this judgment appellant duly perfected this appeal, and presents same by appropriate assignments of error and propositions thereunder, which will be considered in due order.

The following propositions are bottomed upon the assumption that there was no evidence upon which to base the conclusions of the trial judge thereon adverse to appellant. Therefore, same will be grouped and discussed in the following abridged form: (a) That the evidence established that appellees, after notice of the fact that the land did overflow, remained in possession, and made material changes in the premises, and did not seek to disaffirm for more than three months after such notice; (b) that there was no evidence that appellant, in person, made any representations at all; (c) that the evidence established the fact that appellees had failed to make monthly payments on the note assumed by them, and that they had permitted the foreclosure and sale of the property so that the status quo could not be restored; (d) that the trial court erred in rendering judgment for appellees for a portion of the payments and expenditures made by them, because it clearly appears from the evidence that the appellees made payments and expenditures after having been informed that the property did overflow.

[1] Was there evidence, before the court upon which the trial court could properly base his conclusions assailed by said propositions? In determining this it is only necessary that we ascertain whether or not there was any evidence upon which the trial judge could have based his conclusions under the established rules regulating the production and effect of evidence. Therefore, in this investigation, we are not to consider that there was before the court other evidence upon which a different conclusion could have been reached, for, in the disposition of a controverted issue of fact in a trial before a court without the intervention of a jury, this court must treat the conclusions reached, and give effect thereto, the same as if such issues had been passed upon by a jury duly impaneled in the cause. The premises involved were first brought to the attention of appellees and looked over by them in October, 1922, same being shown to them by one M. A. Edwards, a real estate agent representing appellant, the owner, in making sale of said premises. Appellees contracted to buy the property, and took possession of same in November (Thanksgiving Day), 1922, and received a deed properly executed by appellant on December 12, 1922. Appellant's said agent represented to appellees that said property was not subject to overflow, stating that he had been so informed by appellant, who had resided on the property and moved away for some other cause. At the time said property was examined, there was nothing to indicate that same was subject to overflow, and same did not overflow until some time in April, 1923, when it overflowed in the night. A day or two thereafter the land was again overflowed in the daytime, the water covering the entire premises. Soon after this overflow appellees determined to abandon the premises, but had no other place to go, and could not remove therefrom without renting other premises. They could have rented a place, but deferred moving until they could purchase a lot and build on it. The third overflow came in the night within a few days after the second. All of the fruit trees, 145 in number, that had been planted by appellees were washed up and destroyed; likewise the tomatoes and other vegetables growing on the premises, planted by appellees. Before the land was overflowed at any time, appellees, on account of the fact that the house was very low on the ground, being about 12 or 16 inches from the surface, undertook to raise same on blocks about two feet above the surface, and while this work was under headway the house fell, pulling a shed room several inches from the main building. This work was finally completed, and the shed room restored practically to the condition same was in at the time of the purchase. Some two or three trees were cut from the premises by appellees for the purpose of being used in blocking up the house. This did not materially change or damage the place, as there remained a large number of trees growing thereon.

Appellees made five monthly payments of $20 each on the note executed to appellant, amounting to $100, and four monthly payments of $30 each on the note for $1,180 assumed by them, amounting to $120; expended for 135 peach trees, $54; labor planting same, $25; 10 pear trees, $5; labor planting same, $2; plowing, $19.50; five bushels oats, $3.-25; for onion sets, English peas, parsnip seed, garlic seed, lumber for beds, asparagus, rhubarb, tomato seed, potato seed, sweet potato seed, and other garden seed, labor and team, aggregating $358.25; recording fee and revenue on notes, $1.32; taxes, $3.36; blocking house for leveling, $20; raising house, $65; total $447.93, and the cash consideration of $300, making a grand total of $747.93 paid by appellees on account of their transaction with appellant.

The suit to rescind was filed on or about the 20th day of May, 1923. Appellees vacated the premises about the 1st of July, 1923. All of the money expended, including the $300 cash consideration paid by them, was prior to the first overflow. About six weeks prior to that time appellees had been informed by Mr. Anderson, who lived in the community where the premises are situated, that said property did overflow. Soon after this information, he met appellant's agent who had sold the premises to appellees, and stated to him what he had heard through Mr. Anderson. He was again reassured by Mr. Edwards that there was some mistake about what he had heard; that the premises certainly did not overflow, again stating, in effect, what he had theretofore stated to appellees to be the information he had obtained from appellant to the effect that appellant had lived there a long time, and the property did not overflow, and was not subject to overflow. This had the effect of allaying appellees' apprehension in reference to the information they had received, and, acting thereon, they continued in possession of the premises until the same were overflowed as above stated.

The place contains about five acres, and is right in the forks of a creek. The first overflow did not do a great deal of damage, except that it just covered up stuff; did not wash up things. Appellee C. L. Boyer stated: Referring to the first overflow, "In talking it over with the neighbors, they said they supposed that was about as bad as it would ever get, and would probably never have any more, so I thought I would wait. I didn't know what to do; I had no idea what to do. The reason I didn't leave the place after the second flood was that I had no place to go, and I decided then to buy a place in town and move onto it, and, instead, I bought a vacant lot and had to build my house, and so I went immediately to work to build a house and prepare a place to move to."

[2, 3] It is very apparent from this testi-

mony that all of the payments made by appellees on the notes, as well as the other several sums of money expended by them in the raising of the house, planting of the orchard and garden, took place before the first overflow, and that they did not expend any money on said premises thereafter; that they acted with reasonable promptness in disavowing the contract, the institution of proceedings for the cancellation of same; and further, that they were in position to, and did, restore the premises to appellant—if not in the exact condition according to every detail as when received by them, substantially restored same in that condition; that they relied upon, and had a right to rely upon, the representations and statements made by appellant acting by and through his agent, Edwards, in reference to the fact that said land was not subject to and did not overflow; that they were misled and deceived thereby and, but for such representations, would not have contracted for and purchased said premises. Said propositions are therefore overruled. Buchanan v. Burnett et ux., 102 Tex. 492, 111 S. W. 1141, 132 Am. St. Rep. 900.

This holding is not in conflict with the rule of decision announced in the cases cited by appellant, but is in conformity therewith, viz. Southwest Cooperage Co. v. Kivlen (Tex. Civ. App.) 266 S. W. 826; Bowden v. Waggoner (Tex. Civ. App.) 210 S. W. 605; Corbett v. McGregor (Tex. Civ. App.) 131 S. W. 422; Kirkland v. Rutherford (Tex. Civ. App.) 171 S. W. 1031; Minter v. Hawkins, 54 Tex. Civ. App. 228, 117 S. W. 172.

[4] Under the facts, there is no merit in appellant's contention that appellees were not entitled to a rescission because they could not restore the status quo, in that they had failed to make monthly payments on the note assumed by them and had permitted a foreclosure and sale of the property to be made. The foreclosure of this lien did not take place until September, 1923, after appellees had abandoned the property on account of the fraud perpetrated upon them, and had brought suit against appellant for rescission, whereby he was given full and timely notice that appellees had repudiated their liability for the payment of said note, and that further payments thereon would not be made by them, and, therefore, the foreclosure was due to appellant's failure to protect himself against such default. Certainly he was not in position to expect appellees to make further payments on the note after they had discovered the fraud perpetrated upon them and had elected to rescind the transaction in time for him to have protected himself. The foreclosure was the result of appellant's negligence, and not to any remiss of duty on the part of appellees.

Proposition E:

"Appellees not being entitled to rescission, and not having sued for or proved any damage, the trial court erred in refusing to enter judg-

ment for appellant and against appellees for the amount of principal, interest and attorney's fees due on the note executed by appellees and declared on in appellant's cross-action."

[5] Under the case as made by the evidence introduced on the part of appellees, it is our opinion that appellees were entitled to rescission as sought by them; therefore appellant was not entitled to recover on his cross-action, as there could not exist in appellant the right to recover on account of the note executed by appellees as a part of the transaction evidenced by the contract rescinded. Therefore, this assignment is overruled.

Proposition F:

"The judgment of the trial court is erroneous, because the appellees are, in no event, entitled to recover under the evidence; it appearing from the evidence that the alleged representations of M. K. Edwards were merely the expression of his opinion, and, at most, only trade talk, and that appellees made actual and careful inspection of the property after the representations were made, and before contract was executed."

[6] It is of no moment that appellant did not in person make any of the representations relied upon for the rescission, as appellant had commissioned Edwards as his agent to act for him in the transaction, and clothed him with full authority in that respect, and, in making the representations, Edwards acted within the apparent scope of his authority, and, in support of his statements, assumed to quote what appellant should have said to him in reference to the property not being subject to overflow. Therefore, it does not lie at this time in appellant's mouth to repudiate the statements made by Edwards in representing him in his effort to induce appellees to purchase, for, if said statements had not been made, it is apparent from the evidence that appellees would not have purchased. Therefore, the statements cannot be classed in any respect as "trade talk," but as an affirmative statement of material facts, made for the purpose of inducing appellees to become the purchasers of the property. Hence the effect of the statements as made by Edwards is the same as if they had been made by appellant in his own proper person. Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S. W. 1034, 258 S. W. 462; Thompson v. Sawyers, 111 Tex. 378, 234 S. W. 874.

[7, 8] It is contended by appellant that appellees had examined the place, and, therefore, had an opportunity to determine for themselves whether or not the land was subject to overflow, and, perforce of this opportunity, that they are precluded from relying upon the representations that were made by appellant's agent, to the effect that said land did not overflow. The statements were affirmative of a fact, undoubtedly made for the purpose of inducing appellees to enter into the contract, this, and nothing more; and,

same having been accomplished, it would be unthinkable to permit appellant to escape the effect of such representations upon the plea that, because appellees were negligent in relying upon such representations instead of the physical conditions that were revealed to them by a personal examination of the property, they were without a remedy. This would be but to say to appellant:

"You may beguile by false and fraudulent representations those who may rely thereon, and escape responsibility therefor, provided you, at the same time, furnish your unsuspecting victim with an opportunity to detect the fraudulent and false representations made for the purpose of deceiving him."

This would be announcing the doctrine that one relying upon the truth and honesty of a statement made for the purpose of inducing him to act thereon would do so at his peril, provided opportunity had been afforded him to make an independent investigation as to the truth and honesty of the statements made before acting thereon. Such is not the law. Peck v. Robinson & Smith (Tex. Civ. App.) 194 S. W. 456. It is only when one has knowledge of the falsity of material statements and representations made before he acts thereon that he is not entitled to rescind or to recover damages, as election of remedies may be made.

No errors being present in the proceedings, the judgment of the court below is affirmed.

Affirmed.

### On Motion for Rehearing.

[9, 10] Appellant urges the proposition, which is correct in the abstract, that, appellees having alleged that the false representations were made by appellant, and the proof showing that the representations as alleged were not made by appellant, but by an agent acting for appellant in making the sale of the property to appellees, there was a material variance. This proposition embraces a well-recognized rule of law. Touchstone et al. v. Staggs et al. (Tex. Civ. App.) 39 S. W. 189; Peyton et al. v. Cook (Tex. Civ. App.) 32 S. W. 781; Lewis v. Hatton, 86 Tex. 533, 26 S. W. 50; Stevenson v. Cauble, 55 Tex. Civ. App. 75, 118 S. W. 811. However, this ground of the motion cannot be considered, by reason of the fact that the record does not contain an assignment of error presenting this question.

We do not think the other grounds are well taken, and, adhering to the disposition made of this appeal, appellant's motion is overruled.

Overruled.