## GARDNER et al. v. DORSEY. (No. 1683.)

(Court of Civil Appeals of Texas. El Paso. April 9, 1925. Rehearing Denied April 30, 1925.)

1. **Appeal and error** ⊚⟾917(2)—**On failure of record to show action of court on exceptions, it is assumed that they were waived.**

Where record on appeal fails to show action of court on exceptions to petition, it will be assumed that they were waived.

2. **Trial** ⊚⟾194(14)—**Instruction as to right to recover for fraudulent representations of value of stock held properly refused as on weight of evidence.**

In action for damages for fraud, refusal of requested instruction that, if representations consisted of expressions of opinion and the like, plaintiff was not justified in relying

upon them, and if such representations were made basis of action for fraud, plaintiff must further show that they were made with intent to deceive, and presumption would be, in absence of such evidence, that person making representations did so honestly and in good faith, was not error, as such instruction was on weight of evidence, especially, where case was submitted on special issues.

**3. Trial ☞215—In case submitted on special issues instructing jury as to law arising on facts is improper.**

In case submitted on special issues, instructing jury as to law arising on facts is improper.

**4. Fraud ☞66—Findings held to support judgment for fraudulent representations as to value of stock.**

In action for fraud, special findings of jury that one defendant represented that stock sold was fully paid up, that such representation was material and was relied on by plaintiff, who had no notice that part of such capital was not paid, and further findings relating to loss by corporation, *held* to support judgment, and hence it was immaterial whether other representations were expressions of opinion.

**5. Fraud ☞11(1)—Matter stated as existing fact and relied on basis for action.**

Although ordinarily expression of opinion cannot be made basis of action for fraudulent misrepresentation, when party states matter, not as mere expression of opinion, but as existing fact, material to transaction, so that other party may reasonably treat it as fact and rely on it, such statement, if fraudulent, may serve as basis for action for damages.

**6. Appeal and error ☞1002—Finding of jury on conflicting evidence conclusive on appeal.**

In action for fraudulent misrepresentations as to value of stock purchased by plaintiff, on conflict in testimony of plaintiff and one of defendants as to representations concerning stock, whether statement was expression of opinion or positive representation of fact was for jury, whose finding is conclusive.

**7. Fraud ☞22(1)—Failure to investigate representations of seller of stock held not to bar recovery.**

Although buyer of stock has opportunity to investigate desirability of investment, he is under no duty to investigate truth or falsity of seller's representations made to induce him to buy, and failure to investigate does not bar recovery for fraudulent representations.

**8. Fraud ☞35—Acceptance of benefit does not bar action for damages.**

Acceptance of benefits under contract after discovery of fraud amounts to ratification and bars rescission, but does not affect right to sue at law for damages.

**9. Fraud ☞38—Doctrine of laches inapplicable.**

Law action for fraudulent representation in sale of article is governed by statute of limitations, and equitable doctrine of laches does not apply.

**10. Fraud ☞11(2)—Misrepresentations as to value of stock held to render defendant liable.**

Fraudulent misrepresentations as to value of stock which plaintiff was induced to buy made prior to final consummation of contract, and at time when plaintiff might have refused to continue, rendered person making them liable in action for damages.

**11. Fraud ☞29—Recovery may be had against person fraudulently inducing execution of contract for corporation without suing corporation.**

In view of Laws 1919, c. 43 (Complete Tex. St. 1920, or Vernon's Ann. Civ. St. Supp. 1922, arts. 3973a–3973c), action for damages based on deceit may be maintained against person practicing fraud in inducing plaintiff to buy stock of corporation which was party to contract with plaintiff, without suing corporation.

**12. Fraud ☞58(1)—Evidence held to show proper measure of damages for misrepresentation of value of stock.**

In action for fraudulent representations inducing plaintiff to buy stock, evidence *held* to show proper measure of damage.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by Edward Dorsey against Lawrence Gardner and others. From a judgment for plaintiff as against defendants Gardner and another, they appeal. Affirmed.

Turney, Burges, Culwell, Holliday & Pollard, of El Paso, for appellants.

Nealon, Hudspeth & McGill, of El Paso, for appellee.

HIGGINS, J. Appellee filed this suit in the district court, El Paso county, against Lawrence Gardner, A. M. Heineman, and Hugo Eichwald, alleging that appellants, who were directors of the Empire Bottling Works located in El Paso, and while engaged in a directors' meeting of said corporation, combined and organized themselves for the purpose of conducting a business in Mexico, and organized therein what is known as an anonymous society, and gave to it the name of Compania Imperial, S. A., purporting to manufacture and sell beverages at Juarez; that in pursuance of the agreement appellees, as controlling directors in the Empire Bottling Works, sold to this Mexican company a quantity of equipment, bottles, wares, and merchandise, for which appellant Gardner was charged upon the books of the Empire Bottling Works the sum of $5,000, and certificate of stock in the Mexican company was issued in the name of said Gardner in the sum of 10,000 pesos; that the other appellants authorized the defendant Gardner to seek investments of capital for said Mexican company; that in pursuance of said

agreement Gardner on or about March 9, 1922, solicited appellee to purchase stock in the Mexican company, and in pursuance thereof made representations to appellee which were untrue and known so to be, but that said representations were made for the purpose of inducing appellee to believe the same, relying on which appellee on or about March 22, 1922, purchased shares of the capital stock of said Mexican company at the par value of 10,000 pesos; that, if the representations made had been true, the stock would have been worth 10,000 pesos, or $5,000, but in truth said stock was and is without value. The representations alleged to have been made were, in effect: First, that all the capital stock of said company, to wit, 100,000 pesos, had been fully subscribed and paid in, whereas in truth and fact only 32,000 pesos had been paid in, and that part of the assets represented by said payments, to wit, $5,000, was not paid in cash but in property of much less value than said sum; that, on account of such small part of the capital stock having been paid in, the company was without sufficient capital to properly conduct its business; that it had to go in debt and borrow money in order to conduct business.

Gardner further represented that he was well acquainted with conditions in Mexico and the state of the markets therein and what would be the future state of said markets for the products that were to be handled; that the stock of the Mexican company was better than that of the Empire Bottling Works and of the Southwestern Coca-Cola Company; that the Mexican company would make more money than either of said companies; that the stock would earn more money than the stock of either of said companies; that the Empire Bottling Works had always paid good dividends except during the year 1921 when it had a book loss of $21,000, but that said loss was not real, same having occurred through writing off the values by way of depreciation of fixed assets; that Gardner placed in the hands of appellee for investigation a statement of the assets of the Empire Bottling Works showing a book value of 79 per cent., and represented that what was written off would more than absorb the 21 per cent. loss; that in making these representations Gardner spoke for himself and his associates; that with reference to the Southwestern Coca-Cola Company, Gardner represented that it owned valuable plants in Phœnix, Douglas, Globe, and Deming, and had paid in dividends as much as its original capital stock; that its fixed assets were worth about its authorized capital; that it was doing a prosperous business.

It was further alleged that appellant Heineman, on or about March 15th, before appellee paid his money over for the stock, for the purpose of inducing him to complete the purchase, fraudulently represented that the Mexican company was a good company and would be a profitable investment; that he and Eichwald were behind the company, and that any enterprise that he and Eichwald backed was a safe investment. These representations were made for the purpose of inducing appellee to believe that Heineman and Eichwald had invested heavily in said company, whereas, in truth the said stock was practically valueless, and neither Heineman nor Eichwald had invested any cash in said company; that the representations with reference to the value of the stock in the Mexican company was false and its stock was not as valuable as the stock of the other corporations above referred to; that the conditions were such that appellants knew that said stock was not as valuable as represented, could not have the prospect represented; that appellee was a stranger in El Paso when said representations were made and unfamiliar with business conditions in El Paso and Mexico and with the prospects of a Mexican company; that he relied upon what he felt to be the superior judgment of Gardner and Heineman and the knowledge they represented that they possessed, and that but for such representations and his reliance thereon he would not have invested in the Mexican stock; that because of said reliance he on about March 22, 1922, paid over to Gardner $5,000 for stock in the Mexican company of the par value of 10,000 pesos; that Gardner had actual knowledge of the falsity of said representations; that for the purpose of inducing him to purchase these stocks Heineman and Gardner, for themselves and as agents for Eichwald, concealed the following facts: That Compania Imperial had sustained a loss in excess of $1,800 during the year 1921; that the original 10,000 pesos of capital stock of the Compania Imperial did not represent a cash investment but represented personal property of much less value which had been purchased from the Imperial Bottling Works; that neither Heineman nor Eichwald had made a cash investment in the stock of the Compania Imperial; that much of what appellants claimed as assets of said company was wine, whisky, gin, brandy, and agua caliente, of practically no value; that Eichwald, whom appellants represented to be backing the Mexican company, was then and afterwards earnestly insisting that he had no faith in it and wanted nothing to do with it; that, had these facts been disclosed, appellee would not have purchased capital stock in the Mexican company; that the concealments were material. Judgment was asked in the sum of $5,000, with interest, and for $10,000 exemplary damages.

The defendants answered separately. It is not necessary to quote the answers; it

being sufficient to say they present the questions raised by the appeal.

A brief outline of the facts disclosed by the evidence is as follows:

The Empire Bottling Works and the Southwestern Coca-Cola Company were corporations domiciled in El Paso, Tex. Their capital was all paid up. The defendants were stockholders in each of them. Heineman and Eichwald were business associates and owned a controlling interest in the Empire Bottling Works. Each also owned a substantial interest in the Southwestern Company. Gardner was also interested in the latter company to just what extent it does not appear. Gardner for many years had been associated with Heineman in a business way. Heineman and Eichwald resided in California, Gardner in El Paso. The defendants were directors and officers in the Empire Bottling Works. Heineman was president, Eichwald vice president, and Gardner general manager. It seems the two companies were closely allied and engaged in the manufacture and sale of cold drinks and supplies of a kindred nature.

At a directors' meeting of the Empire Company held January 23, 1920, upon motion of Gardner a resolution was adopted "to organize a company in Juarez, Mexico, for the purpose of manufacturing soft drinks. The Empire Bottling Works to furnish this company with necessary machinery and equipment, its equivalent to be taken out in stock by the stockholders of the Empire Bottling Works." Pursuant to this resolution the Compania Imperial, S. A., a Mexican corporation, was organized with an authorized capital of 100,000 Mexican pesos, equivalent to approximately $50,000 in American money. This company engaged in business in Juarez; its business chiefly being the manufacture and sale at wholesale and retail of cold drinks and candy. In accordance with the resolution the Empire Company furnished to the Mexican Company certain machinery, equipment, and supplies of the value of $5,000. This amount upon the books of the Empire Company was charged to Gardner. A certificate in the Mexican company for 10,000 pesos was issued to Gardner, who held the same in trust for himself and the other stockholders of the Empire Company. Other subscriptions to the capital of the Mexican company to the extent of about 22,000 pesos were paid by other persons in cash, and stock certificates issued to them accordingly. This made the paid-up capital of the Mexican company about $16,000 in American money or 32,000 in Mexican pesos. For the year 1921 the Mexican company had a net loss of $1,846.24. About December 1, 1921, the appellee, Dorsey, came to El Paso from his former home in Kansas, where he had been engaged in the drug business. He had about $15,000 which he desired to invest in some established business and to secure employment with the business in which he invested. About March 8, 1922, he met Gardner. Dorsey and Gardner entered into negotiations respecting an investment by Dorsey of his funds in the three companies. After negotiating for a short time, Dorsey agreed to invest $15,000, and he was to be employed at a stipulated salary. It was agreed the three companies should be consolidated and merged into a new one to be then organized. Thereupon Dorsey upon March 9, 1922, drew his check for $15,000 to the order of "Empire Industries (Inc.)." The payee of the check was fictitious. The check was indorsed by Empire Industries and L. Gardner and deposited with the City National Bank, and the amount thereof passed to the credit of the payee. The testimony of Dorsey and Gardner shows they regarded the deposit as in escrow to be held by the bank pending the consummation of the agreement which they had made. The presence of Heineman, the president of the Empire Company, was necessary to consummate the agreement, whereupon Gardner wired Heineman at Los Angeles to come. Heineman came to El Paso, arriving March 15th. He knew nothing about the negotiations with Dorsey until his arrival. After the arrival of Heineman in El Paso the parties were advised by counsel that the proposed consolidation and merger of the various corporations and their business would be unlawful, whereupon it was then agreed that Dorsey would invest $5,000 in each of the companies. The Empire Bottling Works and the Southwestern Coca-Cola Company had no treasury stock and, in order to carry out the agreement theretofore made, the defendants surrendered $5,000 of the capital stock owned by them in each of the last-named companies, and the same was reissued to Dorsey. A stock certificate for 10,000 pesos in the Mexican company was also issued to him. In return for the stock surrendered by them, the defendants received stock for an equal amount in the Mexican company. The $15,000 deposited in escrow in the bank was passed to the credit of the Mexican company or paid out for its account. The Empire Company agreed to employ Dorsey. He entered into its employ and remained employed by it for some time. His connection with the Empire Company was subsequently severed, and this suit was filed.

The issues submitted and findings of the jury are as follows:

"Question No. 1: Do you find from a preponderance of the evidence that defendant Gardner represented to plaintiff, Dorsey, that the capital stock of the Mexican company was paid up? Answer: Yes.

"(A) Did plaintiff rely on such representation in consummating the purchase of the Mexican stock? Answer: Yes.

"(B) Was he without notice that part of the capital stock of said company was unpaid? Answer: Yes.

"(C) Was such representation, if same was made, a material inducement to plaintiff in inducing him to purchase the stock in the Mexican company? Answer: Yes.

"Question No. 2: Do you find from a preponderance of the evidence that defendant Gardner represented, as a matter of then existing fact, to plaintiff, Dorsey, that the stock in the Mexican company was as good as stock in the Empire Bottling Works and the Southwestern Coca-Cola Company? Answer: Yes.

"(A) Was such representation, if same was made, true or false? Answer: False.

"(B) Was plaintiff without notice of the falsity of such representation, if same was made and was false? Answer: Yes.

"(C) Did plaintiff rely on such representation, if same was made and same was false, in consummating the purchase of the stock in the Mexican company? Answer: Yes.

"(D) If such representation was made, and same was false, and plaintiff relied thereon, was such representation a material inducement to plaintiff in purchasing the stock in the Mexican company? Answer: Yes.

"Question No. 3: Do you find from a preponderance of the evidence that defendant A. M. Heineman represented to plaintiff Dorsey, as a then existing fact that stock in the Mexican company was a safe investment? Answer: Yes.

"(A) Was such representation, if same was made, true or false? Answer: False.

"(B) Was plaintiff without notice of the falsity of such representation, if same was made and was false? Answer: Yes.

"(C) Did plaintiff rely on such representation, if same was made and same was false, in consummating the purchase of the stock in the Mexican company? Answer: Yes.

"(D) If such representation was made, and same was false, and plaintiff relied thereon, was such representation a material inducement to plaintiff in purchasing the stock in the Mexican company? Answer: Yes.

"(E) Did said defendant make such representation, if same was made, with the intention that the plaintiff should rely thereon? Answer: Yes.

"Question No. 4: What do you find from a preponderance of the evidence was the actual value of the stock purchased by defendant in the Mexican company at the time of its purchase? Answer: 15 cents on the dollar.

"Question No. 5: What do you find from a preponderance of the evidence would have been the value of the stock had it been as represented, if same was not as represented? Answer: 100 cents on the dollar.

"Question No. 6: Do you find from a preponderance of the evidence that the plaintiff, Dorsey, relied on the defendant Gardner to disclose to him the material facts relating to the financial condition of the Mexican company? Answer: Yes.

"Question No. 7: Do you find from a preponderance of the evidence that defendant Gardner knew that plaintiff, Dorsey, relied on him to communicate to him the facts material to the financial condition of the Mexican company? Answer: Yes.

"Question No. 8: Do you find from a preponderance of the evidence that the property sold to the Mexican company by the Empire Bottling Works, for which stock in said company was issued to defendant Gardner in trust for himself and the other defendants, was less in value than the par value of such stock? Answer: No.

"Question No. 9: Do you find from a preponderance of the evidence that the defendant Gardner failed to disclose this fact, if it was a fact, to plaintiff, Dorsey? Answer: Yes.

"Question No. 10: Do you find from a preponderance of the evidence that plaintiff was without notice of the existence of such fact, if same was a fact? Answer: Yes.

"Question No. 11: Do you find from a preponderance of the evidence that if plaintiff, Dorsey, had known of the existence of such fact, if same was a fact, that he would have refrained from purchasing the stock he did purchase in the Mexican company? Answer: Yes.

"Question No. 11A: Do you find from a preponderance of the evidence that the Mexican company sustained a loss in excess of $1,800 during the year 1921? Answer: Yes.

"Question No. 12: Do you find from a preponderance of the evidence that defendant Gardner failed to communicate to plaintiff, Dorsey, the fact, if it was a fact, the Mexican company had lost in excess of $1,800 during the year 1921? Answer: Yes.

"Question No. 13: Do you find from a preponderance of the evidence that plaintiff, Dorsey, was without notice that the Mexican company had sustained a loss in excess of $1,800 during the year 1921? Answer: Yes.

"Question No. 14: Do you find from a preponderance of the evidence that, had the plaintiff known of this fact, he would have refrained from purchasing the shares in the Mexican company? Answer: Yes.

"Question No. 15: Do you find from a preponderance of the evidence that defendant Gardner failed to communicate this fact to plaintiff, Dorsey, if he did rail, with the intention of concealing the true financial condition of said company from him? Answer: Yes.

"Defendants' Special Issue No. 1: Did the plaintiff, before the consummation of the contract, examine the 1921 financial statement of the Mexican company? Answer: No."

Judgment was rendered in favor of Dorsey against Gardner and Heineman for $4,770. The defendant Eichwald was discharged.

Appellants excepted specially to portions of the petition.

Assignments 5 to 10, inclusive, complain of the overruling of special exceptions to the petition. Assignment 11 complains of the refusal of an instruction which reads:

"You are further instructed that, where representations consist of expectations, expressions of hope and opinion as to the future, and the like, plaintiff is not legally justified in relying upon them, and assuming them to be true, and, if such representation is made the basis of an action for fraud, the plaintiff must further show that same was made with intent to deceive, and the presumption will be, in the absence of such evidence, that the person making such representation did so honestly and in good faith."

The first four propositions submitted by appellants under these assignments, in effect, assert that an action for fraud cannot be based upon expressions of opinion, or upon representations concerning something not in existence, and which refer to something expected to happen in the future, or representations made by one person to another concerning general conditions in a community or country, or an expression of belief that such conditions would improve and that an investment in such community or an enterprise located therein is bound to become prosperous; that the alleged false and fraudulent representations related entirely to the future, were opinions and nothing but an erroneous judgment. The appellant Heineman also presents various assignments questioning the sufficiency of the evidence to support the findings and judgment against him. The twelfth proposition is in support of these assignments of Heineman, and is that there is no evidence "as to any statements made by or attributable to him, except representations or statements as to the future, or expressions of hope or opinion, without any further evidence or presumption of any intention on the part of Heineman to deceive or mislead."

The assignments and propositions are all germane to the same question and will be considered together.

[1-3] So far as concerns the assignments complaining of the overruling of the exceptions, the record fails to show any action by the court upon the exceptions. It must be assumed, therefore, the exceptions were waived. Waiving any question as to the correctness of the rule of law incorporated in the requested charge we are of the opinion its refusal presents no error, first, because it is upon the weight of the evidence (Stookesbury v. Swan, 85 Tex. 563, 22 S. W. 963); and, second, because the case was submitted upon special issues. In such cases it is improper to instruct the jury "as to the law arising on the facts." Connellee v. Nees, 266 S. W. 502, by the Commission of Appeals, and cases there cited.

[4] As to the appellant Gardner, it is unimportant whether some of the representations which he made respecting the favorable prospects of the Mexican company be regarded as mere expressions of opinion upon which a recovery in damages as for deceit cannot be based. This phase of the case as it relates to him affects only the answer of the jury to question No. 2. Entirely independent of this answer are the findings in response to other questions that Gardner represented to Dorsey that the capital stock of the Mexican company was fully paid up, that this representation was material, was relied upon by Dorsey in consummating the purchase, and that he had no notice that part of such capital was not paid, and the further findings in response to questions Nos. 11A, 12, 13, 14, 15, and defendant's special issue No.

1, relating to the loss of about $1,800 by the Mexican company during the year 1921. These findings support the judgment as to Gardner independent of the finding upon the second question. Cator v. Commonwealth Bonding & Casualty Co. (Tex. Com. App.) 216 S. W. 140.

But as to Heineman the situation is different. The judgment as against him is based primarily upon the finding that he falsely represented to the plaintiff as a then existing fact that stock in the Mexican company was a safe investment.

As to Heineman, it was alleged:

"That before the consummation of the sale, to wit, on March 15, 1922, Heineman, in order to induce plaintiff to purchase or complete the purchase of said stock, falsely and fraudulently represented that the Mexican company was a good company; that he and Eichwald were behind it, and that any enterprise that he and Eichwald backed was a safe investment; that Gardner and Heineman knew that plaintiff was seeking from them information as to all facts affecting the value of the Mexican company, and knew that plaintiff relied upon them to tell the whole truth."

Upon this matter the plaintiff testified:

"I met Mr. Heineman the next morning at the First National Bank; Mr. Gardner had introduced me to him the day before; he told me to meet Mr. Heineman the next morning at the bank building and then go to the attorneys for their opinion on the consolidation of the three companies. I met Mr. Heineman there, and we had all usual greetings when we met; I said, 'Mr. Heineman, I am considerably worried, and I just simply want to talk to you personally about a matter of great concern to me.' I says, 'I am making an investment here of $15,000 and $5,000 to go into this Mexican company or its prospects, anything of the kind, I am not familiar with those things; that has worried me considerably; the other companies seem to be all right; I worried about it considerably last night, and my wife and I talked it over among ourselves.' I says, 'I have three children and I cannot afford to take any chances, and I am not going to take any chances; I want safety above everything else, and I want to know if this is a safe and sound investment before we go up and see the attorneys or anything else,' and Mr. Heineman made the statement; he said: 'Mr. Dorsey,' he said, 'whenever Hugo Eichwald and Abe Heineman is behind a proposition,' he says, 'it is a safe investment.' He says, 'We are behind this investment.' He says, 'That is the status of the affair.' I says, 'All right, Mr. Heineman.' We stepped in the car and went upstairs to the office of Turney, Burges & Culwell, and we met Mr. Burges, and Mr. Burges asked his partner, Judge Culwell, to come in, and Mr. Burges said in their opinion this consolidation could not take place as such, that it legally could not take place. The opinion was rather brief; they discussed it very briefly and that was the final opinion. Mr. Heineman left there and went down to the Empire Bottling Works. I recollect we had held a meeting, and, of course, my contract was made contingent upon the consolidation of

the three companies, and when Mr. Heineman and Mr. Gardner saw that it could not be accepted because they could not fulfill their contract and I could not fulfill mine because I could not get consolidated stock, so then they suggested that I tear up this contract and simply make a contract to the effect that the company procure me stock in each one of the three companies."

According to Heineman's testimony, his statement to Dorsey was as follows:

"Mr. Dorsey asked me my opinion regarding the Mexican company, as to what I thought of it; I told him I thought it was a good investment, that I was interested in the Empire Company, and that I thought the prospects were good; as soon as things settled over there it ought to do a wonderful business. I absolutely and unqualifiedly did not state to Mr. Dorsey that I was backing the Mexican company. I positively did not state to Mr. Dorsey that Mr. Eichwald was backing the Mexican company. I did not state to Mr. Dorsey that any company that Mr. Eichwald and myself were behind was bound to be a success. Mr. Dorsey did not say anything to me at that time about putting his life savings into these companies, and he was very much worried about the Mexican company, and wanted my advice about it. I have given practically all of the conversation that occurred between Mr. Dorsey and myself. I cannot just remember the details of the conversation; as I stated before, he asked me what I thought about the Mexican company, and I gave him my opinion, and as I stated before I thought it was a good investment, and thought it would turn out well." * * *

"On our way to Mr. Burges' office Mr. Dorsey asked me what I thought about Mexico; as I stated before, I told him I thought it was good; it was a good investment, and the prospects were very good, and as soon as they got recognition there was no doubt they were going to do a wonderful business, and that was all Mr. Dorsey stated to me regarding Mexico specifically, as to what I thought of it as an investment. There was nothing else said in that conversation by Mr. Dorsey."

As to values, Dorsey, after testifying that he was 42 years old, had been in the drug business since 1902, had been interested theretofore in four small corporations, did all their buying, and also bought for eight other stores, and had been with the Empire Bottling Works from March, 1922, to February, 1924, and had considerable time to find out something about the wholesale business, Mexico business and manufacturing, and without objection, testified:

"Upon that experience I can say that I am qualified to judge what the value of that Compania stock would have been at the time I purchased it had it all been paid up, and I am likewise competent to say what it was worth in the condition I found it not having been paid up and an $1,800 loss sustained the year before. In the event that $1,800 had not been sustained as an operating loss, I would have been qualified to state what it was. If that stock had all been paid up, it would have been one hundred cents on the dollar.

As I found it, taking into account the $1,800 loss and the fact that it was not paid up but for only about $16,000, I would say that it was worth 14 or 15 per cent. The total amount was worth about $700. If they had not suffered that operating loss during 1921, but had only this amount of capital, and transacted all the business contemplated, carried on the stores at the three places, the retail business, with only about $16,000 cash paid in, they would have operated at a very great handicap. Under those conditions I would say the stock would have been worth about 20 per cent.—about $1,000. In wholesaling or merchandising of any kind, I have always been taught to believe the cash turnovers is the way you make your money. In wholesaling they usually figure 12 to 30 turnovers a year; they usually do business on a close margin because they have the cash to transact their business. The reasons are it is essential to have cash, and in order to get good customers you have got to make attractive prices and turn your money over fast; you have got to have operating capital; you cannot get borrowed capital; you have got to have it all subscribed and paid for; one should have it under their control; that is the way you make your money by 12, 24, or 30 turnovers during the year. With paid-up capital we would not necessarily have to be borrowing money on our credit or anybody's else credit. They would not have to borrow it, if they had it paid up. While I was there, the Compania Imperial never did pay up with the Empire; when I left the Compania Imperial still owed the Empire Bottling Works $52,000."

[5] Ordinarily the expression of an opinion cannot be made the basis of an action. This, however, is not without exception. Mr. Pomeroy says:

"Wherever a party states a matter which might otherwise be only an opinion, and does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact, and rely and act upon it as such, then the statement clearly becomes an affirmation of fact, within the meaning of the general rule, and may be a fraudulent misrepresentation. The statements which most frequently come within this branch of the rule are those concerning value."

The principle of the rule thus stated has been recognized by the Texas courts in a number of cases. Riggins v. Trickey, 46 Tex. Civ. App. 569, 102 S. W. 918; Zundelowitz v. Waggoner (Tex. Com. App.) 231 S. W. 721; Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S. W. 1034, 258 S. W. 462; Cole v. Carter, 22 Tex. Civ. App. 457, 54 S. W. 914; Newton v. Ganss, 7 Tex. Civ. App. 90, 26 S. W. 81; Ry. Co. v. Shuford, 36 Tex. Civ. App. 251, 81 S. W. 1194; Freshwater v. Hoyt, 259 S. W. 923.

In the case last cited by the Commission of Appeals it was said:

"In this case Freshwater assumed to know and state the facts in regard to his possession and as to any adverse claim thereto. Having

made the statement as a fact and not as a mere opinion, it would be immaterial and no defense, even if he had pleaded and proved that the statement that he was in possession was a mere expression of opinion, and made without any intention to deceive or mislead. Here the parties did not have equal means of information respecting the facts. Freshwater was supposed to know the facts, and Hoyt and Bellport had the right to rely on his knowledge as well as on the truthfulness of his statements."

Again, in Houston v. Darnell Lbr. Co. (Tex. Civ. App.) 146 S. W. 1061, it was said:

"Even though the representations made by Houston be considered as statements of opinion only, as found by the jury in answer to special issue No. 5, nevertheless, if the same were false, we think they constituted a sufficient predicate for the judgment, if Houston knew them to be false and if he made them with the fraudulent intent to deceive Darnell and to induce him to purchase the certificate of deposit, and if they did have the effect so intended."

And in White v. Peters (Tex. Civ. App.) 185 S. W. 659, Chief Justice Fly said:

"The special charge was properly refused because there was no evidence tending to show that the representation of the agent as to the quality of the land was an opinion, but, if there had been, the charge did not express the law as to opinions. It is not the law that the expression of an opinion will not be cause for canceling a contract made through reliance upon the opinion whether 'erroneous or untrue' or not. The law is that, when a person makes a statement in the form of an opinion and knows of facts which make the opinion a sham and a fraud, he has really made a misrepresentation of fact. Bigelow on Estoppel, p. 636."

[6] According to the testimony of Heineman in his statement to Dorsey, he merely expressed the opinion that the proposed investment in the Mexican company was safe, but according to Dorsey's testimony it went further than that and amounted to a positive representation of its safety, and should be treated as a representation of fact. It was for the jury to decide which version was true, and its finding upon the issue in favor of the plaintiff is conclusive.

For the reasons stated, the assignments and propositions under consideration present no error as to either of the appellants.

[7] As to those phases of the appeal which assert that the appellee cannot recover because he had ample opportunity of his investigate and determine for himself the desirability of his investment and that in relying upon the representations made to him he did so at his peril, this contention is contrary to the rule announced in Labbe v. Corbett, 69 Tex. 509, 6 S. W. 808; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900, and other cases to like effect which hold that a vendee who has been induced to enter into the contract by fraudulent misrepresentations by the vendor is un-

der no duty to his vendor to investigate the truth or falsity of the representations so made, and his failure to make such investigation does not bar his right of recovery.

[8] The eighth proposition is to the effect that by the acceptance of benefits under the contract the plaintiff is estopped from suing to rescind, and the ninth is that by the acceptance of benefits under the contract for a long time during which time he remained silent as to any alleged fraud or misrepresentation the plaintiff is therefore guilty of laches which precludes recovery.

As to this it is sufficient to say that this is an action in damages for deceit. The acceptance of benefits after discovery of the fraud amounts to a ratification of the contract and bars the equitable remedy of rescission, but does not affect the right to sue at law for damages. Grabenheimer v. Blum, 63 Tex. 369.

[9] As to the matter of delay, this is a matter governed by the statute of limitation, and the equitable doctrine of laches has no application to the present action.

Appellants' seventh proposition is overruled because the suit is for damages and not to rescind.

Appellants' fifth and fourteenth propositions read:

"Fifth. Misrepresentation, to be actionable, must be made before a sale based thereon is made, and where, as in this case, a part of the alleged misrepresentation complained of was after the parties had agreed upon the sale and the terms thereof, an action cannot be predicated upon such misrepresentation, if any, as was made thereafter."

"Fourteenth. The evidence is uncontradicted that plaintiff had concluded his contract before having any conversation with the defendant Heineman, and there could therefore have been no reliance on any statements or expressions of opinion attributed to Heineman."

We fail to see the force of these propositions as applied to Gardner in view of the fact that the undisputed evidence shows the misrepresentations charged against him were made prior to the time any agreement was made.

[10] As to Heineman the evidence shows that, prior to his arrival in El Paso, the plaintiff had agreed with Gardner to make an investment of $15,000 in the three companies, and the plan agreed upon was that the companies were to be consolidated into a new company to be organized. The plaintiff's investment was to be made in the new company, which was to give him employment. The $15,000 had been deposited in escrow with the City National Bank. This was the status when Heineman arrived in El Paso. However, a doubt had been suggested as to the legality of the proposed consolidation, and when the conversation occurred between Heineman and Dorsey above quoted they were on their way to the office of the attorneys for the Empire Bottling Works to obtain an opin-

ion as to the legality of the proposed consolidation. Upon reaching the office of the attorneys, Heineman and Dorsey were advised that the proposed merger was unlawful. The plan was then modified and a contract entered 'into between the Empire Bottling Works and Dorsey, a copy of which is attached to the answer of Gardner, and reads as follows:

"Whereas, Edward Dorsey of El Paso county, Texas, has at the request of the officers of the Empire Bottling Works, purchased capital stock at the par value of five thousand ($5,-000.00) dollars, of the Empire Bottling Works, a corporation incorporated under and by virtue of the laws of the state of Texas; and has deposited in the City National Bank of El Paso, Texas, the sum of fifteen thousand ($15,000.00) dollars, for the account of the said Empire Bottling Works; five thousand ($5,000.00) dollars, of which shall be applied to the payment for said stock, when same is delivered to said Edward Dorsey; five thousand ($5,000.00) dollars, of which shall be applied to payment of capital stock of the Southwestern Coca-Cola Company, a corporation incorporated under the laws of the state of New Mexico; and the remaining five thousand ($5,000.00) dollars, of which shall be applied to payment of capital stock of the Compania Imperial, S. A., a corporation under the laws of the republic of Mexico, the stock of the last two mentioned corporations, each to be of the par value of five thousand ($5,000.00) dollars; and,

"Whereas, the inducement to purchase said stock was the offer of employment by the Empire Bottling Works:

"Now, Therefore, Know All Men by These Presents: That the Empire Bottling Works, a corporation duly incorporated by authority of a resolution passed by the board of directors on the 16th day of March, A. D. 1922, has employed, and does by this instrument employ and promise to' pay the said Edward Dorsey as follows, and for the time to perform the services hereinafter stated:

"Said employment is to continue as long as the said Edward Dorsey maintains said investment; and the duties of the said Edward Dorsey shall be those 'pertaining to an executive position in the office of said company, or shall be office work, or sales work in the city of El Paso, Texas; and the compensation for such duties, and the salary of the said Edward Dorsey, shall be two hundred and twenty-five ($225.00) dollars per month, payable monthly, beginning the 16th day of March, 1922, and continue through the term of his employment; and in consideration of the premises, the said Edward Dorsey promises to remain in the employ of the said Empire Bottling Works, and perform the services required by this contract so long as he shall maintain said investment.

"It being expressly understood and agreed, however, that at no time shall said salary be reduced below two hundred and twenty-five ($225.00) dollars, per month, except by express written agreement of the parties hereto; and that an increase of salary shall not operate as a cancellation of this contract, but merely as an amendment thereto should such increase be agreed upon or paid, and that the other terms of the contract shall remain as herein provided in the event such salary is at any time or times increased.

"It is expressly agreed and understood that the said Empire Bottling Works shall procure and deliver to said Edward Dorsey, the capital stock of the companies hereinbefore specified within thirty (30) days from the date hereof, and in the event of its failure to so deliver said stock within such time, this contract shall ·be canceled, and the said Empire Bottling Works shall thereupon immediately return to the said Edward Dorsey the fifteen thousand ($15,000.-00) dollars, deposited by him in the City National Bank of El Paso, Texas, to its account, as aforesaid.

"It is further understood that the said Empire Bottling Works does not obligate itself to purchase or refund any part of said investment of the said Edward. Dorsey.

"In witness whereof, the said Edward Dorsey has affixed his signature hereto; and the Empire Bottling Works, a corporation, has caused this contract to be signed by its president, and its corporate seal attached at El Paso, Texas, this 16th day of March, A. D. 1922.     [Signed]   Edward Dorsey.
"[Signed]   Empire Bottling Works,
"By A. M. Heineman, Its President.
"[Seal.]"

Upon this state of facts it is apparent the contract was executory at the time the conversation occurred between Heineman and Dorsey. It is upon this conversation that the finding in response to question 3 is predicated. The final consummation was subsequent to this·conversation and upon a different plan. It being thus executory, the plaintiff could have refused to go further when they were subsequently advised that the proposed consolidation was unlawful, and plaintiff could have insisted upon the return of the escrow deposit.

The evidence thus showing that Heineman's representations were made prior to the final consummation of the contract and at a time when the plaintiff might have refused to go further, the fourteenth proposition is without merit.

The eleventh proposition reads:

"It affirmatively appears that the contract made basis of this action was between the plaintiff and the Empire Bottling Works, a corporation; that neither of the appellants were individually parties to such contract. Whatever obligation, therefore, was incurred and that might be insisted upon by the appellee is and was against the Empire Bottling Works, and not against these appellants personally, for which reason the judgment entered was erroneous."

[11] This is not a suit upon the contract. The action is for damages based upon deceit. Appellants were active participants in the fraud practiced, and liable as joint tort-feasors. If it be conceded that the Empire Company is also liable, nevertheless appellee had the right to sue such of the joint tort-feasors as he saw fit. This is the general rule as to joint tort-feasors, but in this connec-

tion see, also, Acts of 1919, c. 43 (article 3973a et seq., Complete Texas Statutes 1920 [Vernon's Ann. Civ. St. Supp. 1922, arts. 3973a–3973c]).

[12] What has been said disposes of all questions presented except the tenth proposition, which asserts that the evidence fails to show a proper measure of damage. This is untenable in view of the above-quoted testimony of Dorsey.

Affirmed.