## KAZMEIR v. KING.

No. 3838.

Court of Civil Appeals of Texas. El Paso.

June 8, 1939.

Rehearing Denied July 13, 1939.

Bailey & Shaeffer, of Dallas, for appellant.

Ben F. Lowrie, of Greenville, for appellee.

NEALON, Chief Justice.

F. W. Kazmeir appeals from an order entered in the District Court of Hunt County overruling his plea of privilege to be sued in Brazos County in a case wherein Henry M. King, appellee herein, was plaintiff, and Kazmeir and Buckeye Incubator Company, a corporation, were defendants. The plaintiff in his original petition alleged that Kazmeir resided in Brazos County and that the Buckeye Incubator Company was incorporated under the laws of the State of Ohio, "and has been doing business in Hunt County, Texas, and having as its agent the said F. W. Kazmeir, and that the said F. W. Kazmeir is authorized to receive citation for said Buckeye Incubator Company." Plaintiff further alleged that the corporation, acting by and through Kazmeir, its agent, who was acting for both himself and the Corporation, by making false representations as to the condition of a certain incubator styled "Incubator No. 46—2," induced plaintiff to buy the incubator and pay therefor $150 in cash, trade in another incubator described as "Buckeye Incubator No. 9," and execute and deliver to the Corporation three promissory notes, each in the principal sum of $170, and due, respectively, on June 1, 1937, June 1, 1938, and June 1, 1939. King alleged and testified that Kazmeir represented to him that Incubator No. 46—2 was in perfect working order and in good working condition for use in plaintiff's chicken hatchery in Hunt County. He alleged that said misrepresentations were knowingly, wilfully, negligently, fraudulently, wrongfully and wantonly made, and that each of defendants knew that the incubator was defective, imperfect and not capable of hatching, and that it would burn and destroy the eggs placed therein; that plaintiff relied on these representations; that he had not seen the incubator, did not know and could not know that it was defective and dangerous; that he installed incubator No. 46—2 and placed therein several thousand eggs belonging to his customers for the purpose of hatching them, and because of the condition of the incubator the eggs were burned and rendered worthless, and plaintiff was required to pay his customers for said eggs to his damage in the sum of $500; that electric current to operate the incubator cost him $100; that the good will of his business prior to the misfortunes complained of was of the reasonable and fair value of $3,000; that as a result of the circumstances related he had lost much business and good will and the business and reputation of his hatchery was damaged in the amount of $1,000, and his loss of profits amounted to $2,000. He prayed for judgment cancelling his notes, for the return of incubator No. 9, or its reasonable value of $150, and judgment for his damages in the sum of $4,500, and for costs.

Kazmeir's plea of privilege was in statutory form.

In due time King filed his controverting affidavit in which he restated the allegations of his petition, alleged that the false and fraudulent representations were made by Kazmeir in Hunt County; that his damage was incurred in that county; that he was induced to make a contract and agreement to be performed in Hunt County and that the venue of his suit lay in said county.

A hearing was had upon the allegations of the plea and controverting affidavit. King testified that Kazmeir called upon him on August 3, 1936, in his place of business in Greenville, Hunt County; that he made the purchase on the terms and conditions alleged; that Kazmeir said the electric machine that he was offering to sell was better and more convenient than the one King was using; that it took less time to operate it; that it could be kept at a more even temperature, and that King

should get better hatches than he was getting from his old machine, which was a hot water machine; that the new machine was as good as a new one—"it would be difficult to tell the cabinet from a new one, and that it would operate just as well as a new machine"; that Kazmeir said "something about his going over and seeing the machine, but he told Kazmeir that he had perfect confidence in him, had known him for years, and had known that he had been prominent in the chicken world," and was willing to take his word for it that the machine was in good operating condition and would operate as well as a new machine; that he was pretty busy and would not lose time to go and see the machine; and that in buying the machine he relied upon the representations made by Kazmeir. He then testified as to his attempt to use the machine, and described it as being much in the condition described in the pleadings. He testified that he started the machine going about the 1st of February, 1938; that it caused trouble from the first; that he tried to operate it and it wouldn't operate. He also testified to reporting the imperfections to the Corporation, getting their advice and of their attempt, through one of their employees, to remedy the defects. He testified that it burned about 10,000 eggs, about 4,000 of which belonged to other people; that he paid for the destroyed eggs; that the eggs he put in the machine cost about twenty-seven cents a dozen; that the customers who saw the eggs after they had been in the machine refused to give him other eggs for hatching purposes. After hearing this evidence of King and examining documentary evidence submitted the Court overruled the plea of privilege.

## Opinion

In this case certain facts are undisputed. They are that Kazmeir was the agent of the Buckeye Incubator Company; that such negotiations as he had with King were in Hunt County; that if he made any representations as to the quality, condition and character of the incubator involved in this controversy they were made in Hunt County, and the purchase of the incubator was made in Hunt County, and that the residence of Kazmeir was at all times in Brazos County. To fix the venue in Hunt County as against Kazmeir, appellee relies upon paragraph 7, Article 1995, R.C.S., as amended in 1927, and as it appears in Vernon's Annotated Revised Civil Statutes. It reads: "7. *Fraud and Defalcation.* In all cases of fraud, and in all cases of defalcation by public officers, suit may be brought in the county where the fraud was committed or where the defalcation occurred, or any of such suits may be brought where the defendant has his domicile."

By reference to our preliminary statement it will be seen that the controverting affidavit was sufficient to declare upon fraudulent representations alleged to have been made by Kazmeir and upon which King relied in making his purchase. It was necessary for him to prove the venue facts.

Appellant argues that at most he merely expressed an opinion and indulged in "puffing." However, the evidence of King is sufficient to support the finding of the Court that the statements testified about were representations of fact, that the matters testified about were particularly within the knowledge of Kazmeir, that King relied upon them in making the purchase, that they did not truly describe the condition of the article sold, and that King suffered damage. One might well infer from the testimony of King that the incubator was worse than worthless for the purposes for which he purchased it, that it was not only not a source of profit, but a cause of serious loss. If the representations were made as alleged and testified they were about matters that were within the peculiar knowledge of Kazmeir, or at least the situation was such as might well lead King to believe that Kazmeir knew the condition of the incubator and was capable of judging it with the accuracy of an expert. In similar situations expressions in the form of opinions have been held to be representations of fact. Gardner v. Dorsey, Tex.Civ.App., 272 S.W. 266; 20 Tex.Jur., pp. 24 and 25. We think the trial Court did not err in so treating them.

Judgment of the District Court is affirmed.