* Writ of error granted.
Appellee Southland Life Insurance Company, a corporation, brought this suit against appellants, Kean Lumber Company, a corporation, and S.W. Sibley, alleging that Sibley employed one J. C. Ellis, a joint broker, and in that capacity and in the matters here involved was acting for all parties to this controversy, to negotiate a trade of 22 houses and lots in San Jacinto Lawn, an addition to the city of Dallas, Tex., in exchange for sundry properties which had been acquired by Southland Life Insurance Company through foreclosures. Title to the San Jacinto Lawn property was vested in Kean Lumber Company, in which Sibley was the principal stockholder. The Kean Lumber Company property was incumbered for $96,800, by vendor's notes and mortgages, upon some of which Sibley was primarily liable as maker, and in the transaction Southland Life Insurance Company was to take said property subject to said incumbrances, but not to exceed that sum, except for ad valorem taxes for 1926. It was represented by Sibley that each of the San Jacinto Lawn lots was improved with a brick veneer dwelling, with outhouses, and promised that all such improvements as had not then been completed would be completed at or after the time of closing the transaction. Such representations and promises were communicated by Ellis to the proper officers of Southland Life Insurance Company, and were relied upon by them as a material, inducing cause for closing the trade.
Pursuant to such representations and promises Sibley and the Kean Lumber Company caused the 22 houses to be pointed out to Southland Life Insurance Company's representative, a written contract was made between Southland Life Insurance Company and Kean Lumber Company setting out the terms of the deal, and deeds were duly passed consummating the trade.
It is alleged that some of the houses were never completed by the Kean Lumber Company and Sibley, and that Southland Life Insurance Company, at an expense of $2,680.93, itemizing same, caused them to be completed after the defendants had failed to do so. It is further alleged that among the properties pointed out to Southland Life Insurance Company was lot 6, block E, San Jacinto Lawn; that lot was improved. It is alleged that it was represented to Southland Life Insurance Company that said improved lot was lot 7, block E, San Jacinto Lawn. Southland Life Insurance Company, relying on such representation, acquired title to said lot 7, believing that it was improved. It subsequently learned that lot 7, to which it had thus acquired title, was a vacant lot, and was not the improved property pointed out to it before the transaction was closed. The difference in the market value between lot 6 and lot 7 was alleged to be $3,100.
It was further alleged that the promises made by Sibley regarding the completion of the houses were false and fraudulent, and were made for the purpose of inducing Southland Life Insurance Company to make the trade. Appellee set out the several items of expenditures incurred and paid to complete the properties and prayed for judgment against Kean Lumber Company, jointly and severally, for the amount of its damages as alleged.
We have found no answer of the Kean Lumber Company in the record. Sibley's original answer contained pleas of general exception and general denial. Sibley's amended answer pleaded general exception, special exceptions, general denial, and special denials. On motion Sibley's amended answer was stricken, for the reason that same was not filed three days before announcing ready for trial, to which Sibley excepted. At the conclusion of the evidence the jury returned a verdict, on special issues submitted, substantially as follows, which issues more definitely reflect the issues tendered in the pleading than the foregoing brief statement:
(1) Sibley represented to Ellis that the property located in San Jacinto Lawn, which was to be traded to Southland Life Insurance Company, consisted of 22 houses and lots.
(2) Such representation was communicated to Southland Life Insurance Company.
(3) Southland Life Insurance Company relied upon such representation as a material, inducing cause for entering into the contract.
(4) Such representation was false.
(5) Southland Life Insurance Company would not have entered into the contract and made the trade it did with Kean Lumber Company, except for such representations.
(6) The reasonable market value of the net equity (that is, the full value, less the incumbrance of $4,400) of lot 6, block E, San Jacinto Lawn (the improved property), on February 17, 1926, was $3,100.
(7) The reasonable market value of lot 7, block E, San Jacinto Lawn (the vacant lot), on February 17, 1927, was $1,250.
(8) Sibley promised Ellis that the houses in San Jacinto Lawn, to be conveyed to Southland Life Insurance Company in the transaction, would be fully completed.
(9) At the time Sibley made such promise to Ellis, he did not intend to comply with such promise.
(10) Such promise was communicated to Southland Life Insurance Company.
(11) Such promise was relied upon by Southland Life Insurance Company as a material, inducing cause for entering into the contract.
(12) Kean Lumber Company made representations to Southland Life Insurance Company as to whether lot 7, block E, had a house on it.
(13) Southland Life Insurance Company relied on and acted on representations in buying said lot. *Page 252 
(14) Southland Life Insurance Company, in closing the trade, did not make their own inspection of said properties and rely on their own inspector's report.
(15) (To be answered conditionally.)
(16) Kean Lumber Company did not complete the houses in San Jacinto Lawn involved in this suit at its own expense.
(17) (To be answered conditionally.)
(18) Southland Life Insurance Company necessarily expended $1,866.06 to complete said houses.
(19) Prior to the conveyance to it of said properties, Southland Life Insurance Company did not make an investigation whether a house was located on lot 7, block E, of San Jacinto Lawn addition.
(20) A proper investigation would not have disclosed that no house was situated on said lot 7.
(21) Sibley directed Ellis not to make any representations as coming from him.
On the verdict as returned, judgment was entered for appellee against Sibley and Kean Lumber Company, jointly and severally, for $3,155.78. Sibley alone prosecutes this appeal.
 Opinion.
Appellant's propositions are extremely lengthy. He discusses the first six propositions together. The contention made is to the effect that in neither appellant's pleading nor proof offered is alleged or shown the values of the properties appellee gave in exchange or the values of the properties received in exchange, in the transaction between appellee and appellant and Kean Lumber Company; that appellee's measure of damage, if any it has, "is the difference between what the party defrauded gave for the land which he obtained and what he received in exchange"; and that, as neither the pleading nor proof show such values or difference in values, no basis for damage is shown, and the petition was subject to appellant's general demurrer, and the evidence, not showing the relative values of the properties, furnishes no basis for judgment for appellee.
In 1919, the Texas Legislature enacted what is now, and was in operation at the time of the transactions involved here, article 4004. That article reads:
"Actionable Fraud. Actionable fraud in this State with regard to transactions in real estate or in stock in corporations or joint stock companies shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract. Whenever a promise thus made has not been complied with by the party making it within a reasonable time, it shall be presumed that it was falsely and fraudulently made, and the burden shall be on the party making it to show that it was made in good faith but was prevented from complying therewith by the act of God, the public enemy or by some equitable reason. All persons guilty of such fraud shall be liable to the person defrauded for all actual damages suffered, the rule of damages being the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract. All persons making the false representations or promises and all persons deriving the benefit of said fraud, shall be jointly and severally liable in actual damages."
The portion of the above article referred to and discussed by Judge Bishop, for the Commission of Appeals, section A, in Clem v. Evans, 291 S.W. 871, 51 A.L.R. 1135, is not involved in this case; nor the latter part of the article, applying to exemplary damages.
In the trial of the case at bar the court submitted the facts for actual damages only, and, in submitting the facts to be found, applied the rule for the measure of damages as in the above article of the statute; that is, the difference between the value of the property as represented and as it would have been worth, had the promises been fulfilled, and the value of the property in the condition it is delivered, and not the common-law rule as it had obtained before the above statute was enacted. The question, then, is whether since the enactment of article 4004, the measure of damage in the exchange of real property, induced by fraud, is the difference between the value of the property as represented, or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract.
In this case, as we view it, Sibley was not sued on his promises as contractual obligations. Such promises, were shown only as elements of actionable fraud which induced the contract, and the action was one for fraud and deceit, and not an action ex contractu. A false representation of an existing fact, where damage resulted therefrom, has always been ground for actionable fraud. Before the enactment of article 4004, in the case of future promises, the law wag that a promise knowingly, falsely, and fraudulently made, without the intent to fulfill it, when acted upon to his damage by the promisee, constituted actionable fraud. Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S.W. 1034, 258 S.W. 462,51 A.L.R. 1. The fact was sufficiently pleaded, found by the jury, and the finding supported by evidence, that the difference in the market value between lot 6 and lot 7 was $3,100, and that the cost necessarily incurred to finish the houses was $1,866.06; judgment was rendered for that total, less certain admitted credits.
The case of George v. Hesse, 100 Tex. 44, 93 S.W. 107,8 L.R.A. (N.S.) 804, 123 Am.St.Rep. 772, 15 Ann.Cas. 456, is referred to by appellant. It states the common-law rule as to the measure of damages on exchange of *Page 253 
real property, induced by false representations, and where the suit was to recover damages for the fraudulent representation by which the plaintiff has been induced to enter into the contract to his loss, the rule for the measure of his damages stated to be "the difference between the value of that which he has parted with and the value of that which he has received under the agreement." That case was decided several years prior to the enactment of article 4004.
The suit here we construe to be one for deceit, resulting in damages, and not for breach of contract. The elements of facts pleaded and proved, as to the damages sustained, bring the case, we think, under the rule for the measure of damages stated in article 4004 of our statute. There is in the facts of this case, as found, a false representation of an existing material fact in pointing out lot 6 with a house thereon, and representing it as lot 7, with no house thereon; there is also here, as found, a false promise to do some act in the future, made as a material inducement to enter into the contract for the exchange of properties, and but for which promise the contract would not have been entered into.
In Prideaux v. Roark, 291 S.W. 868, Judge Bishop of the Commission of Appeals, section A, defines a false representation of a past or existing fact, as applied to article 4004, to be a representation which is untrue, though the party making it did not know it was untrue at the time of making it. We have here, as found, a false promise to the effect that the houses would be fully completed when the houses were not fully completed, and that the party so promising did not, at the time of making the promise, intend to comply therewith. In the same case Judge Bishop defines a false promise, as applied to article 4004, to do some act in the future in a promise which the promisor did not intend to perform at the time it was made. We see no reason why this case does not come squarely under article 4004, and have applied the measure of damages therein provided.
In enacting the article defining what shall constitute actionable fraud and prescribing a rule for damages, the Legislature said, in section 4 of the act (Acts 1919, c. 43), that the fact that there is now in this state no comprehensive law protecting citizens from being defrauded by false representations and promises, evidently intending by the act to change the common-law rule as to the measure of damages, as stated in George v. Hesse to the statutory rule as in the act, when the facts as stated in the act are made to appear. This case clearly involves a "transaction in real estate," an exchange of real estate for real estate, regardless of their respective values. The suit is not one for specific performance of a contract, nor for damages on breach of contract, but is one for deceit, and strictly under the provisions of the act of 1919.
There are some cases referred to and discussed by appellant and appellee which seem to follow the common-law rule for the measure of damages in real estate and stock transactions stated in George v. Hesse, as that rule was applied prior to the act of 1919, and referred thereto by appellant as authority for so holding; but, without undertaking to analyze or differentiate these cases in their facts from the case at bar, we hold that the trial court was not in error in applying the measure of damage stated in article 4004 of our statute.
The evidence is too extensive, some 268 pages of the record and maps, to reproduce it here in reply to appellant's propositions, severally, that it does not support the jury's findings. We have carefully reviewed the evidence, and are of the opinion that it is sufficient to call for the submission of each of the several issues submitted, and to sustain the findings made, and we overrule each of such propositions.
The contract involved here, executed by the Kean Lumber Company, contained the following:
"This contract embodies within its terms the complete agreement between the parties hereto, and there are no verbal understandings or agreements not incorporated herein."
The trial court permitted parol evidence on the several issues of fraudulent representations and promises made prior to the contract, and appellant submits that the admission of such evidence violates the rule against admitting parol evidence to alter, vary, add to, or contradict the terms of a written contract. The contention is not sustained by the authorities. The rule is clearly stated in 22 C.J. 1215, where it is said that parol evidence is always admissible to show, for the purpose of invalidating a written instrument, that its execution was procured by fraud, or that, by reason of fraud, it does not express the true intentions of the parties, and that the rule is not rendered inapplicable by the fact that the writing contains a recital similar to that above. Allegations of fraudulent representations and promises were sufficiently pleaded to admit the evidence.
Appellant's fourth proposition relates to what he calls his alternative promise, asserting in substance that, if he made any promise relative to completing the unfinished houses, such promise was an alternative promise that Kean Lumber Company would complete them or would make satisfactory guaranty by posting a certified check for $5,000, and that by doing so he, Sibley, was relieved from any further liability on his promise. We think that probably under the authorities cited, such would be the rule if appellee's suit was on Sibley's promise as a contractual obligation. But such is not appellee's cause of action as we view it. But, as hereinbefore said, the suit is for deceit, a statutory action for *Page 254 
damages, under article 4004, growing out of a contract as pleaded, by reason of the fraudulent representations and promises inducing the contract.
Appellant's propositions have not been severally discussed, but all have been considered and are overruled.
Finding no reversible error, the case is affirmed.